AULD, administrator, *v.* SOUTHERN RAILWAY COMPANY.

1. The act of crossing from one car platform to another on a moving train is not per se negligence, in the absence of a rule or notice warning the passenger from such act. A passenger who undertakes to go from one car to another while the train is in motion assumes only the risks

incident to such undertaking in the ordinary operation of the train; and if such passenger is injured by being thrown from the platform by a sudden jerk, questions of negligence of the defendant in causing the injury and of the passenger's contributory negligence are, for the jury.

2. In a suit against a carrier for an injury to a passenger from being precipitated from a moving train while crossing from one coach to another, testimony of a known usage or custom of passengers to cross is competent evidence, not to justify or excuse the passenger from attempting to cross when it would be an obviously hazardous act, but as illustrating the character and nature of the act as bearing on the passenger's alleged contributory negligence in crossing.

3. If data supplied by a witness can be placed before the jury in such a way that they may draw the inference as well as the witness, it is superfluous to add by way of testimony the inference which the jury may well draw for themselves.

MAY 10, 1911.

Action for damages. Before Judge Reagan. DeKalb superior court. March 9, 1910.

*Burton Smith,* for plaintiff.

*McDaniel, Alston & Black,* for defendant.

EVANS, P. J. W. N. Auld, administrator of Mrs. Eliza Auld, brought suit, in the superior court of DeKalb county, against the Southern Railway Company to recover damages for the alleged wrongful death of the plaintiff's intestate. The injury resulting in Mrs. Auld's death occurred in the State of South Carolina, and the action was in virtue of the South Carolina statute authorizing suit by an administrator. The plaintiff was nonsuited. The substance of the evidence was that Mrs. Auld, a married woman, 44 years of age, the mother of seven children, on the day previous to her death had been discharged from a sanitarium, and was returning to her home in company with her husband and brother. She had been in failing health for two or three years before being sent to the sanitarium. She was despondent, morose, and gloomy. At the time of her injury her mental and physical health was a great deal better than it had been. Her party boarded the cars of the defendant at Toccoa, Georgia; the particular coach in which she entered was vestibuled. The coach in the rear was not vestibuled. The train was about two hours behind time. The country traversed by the defendant's road was mountainous. The train was running fast, trying to catch up the lost time. A passenger testified that the husband and brother of Mrs. Auld were in the rear coach; that he observed her leave her seat, go to the rear of the car and

pass through the door. "As she left the door there was a sudden plunge or jerk of the train, and we all had to hold our seats, just at the point she was thrown from the train." She was found lying near the track in an unconscious condition and died from her injuries. One of the plaintiff's witnesses testified that "the train was about two hours late that night," and in the absence of any other testimony on the subject we infer that the injury occurred at night.

1.    It is not negligence as matter of law for a passenger to pass from one coach to another while the train is in motion. Whether or not a passenger is negligent in so doing depends upon the facts and circumstances of the particular case. *Cotchett* v. *S. & T. Ry. Co.,* 84 *Ga.* 687 (11 S. E. 553); *A. S. Ry. Co.* v. *Snider,* 118 *Ga.* 146 (44 S. E. 1005). Some early cases may be found in other jurisdictions in which it is said that a passenger's attempt to cross the platforms between the coaches while the train was running was a negligent act. The later cases are harmonious that it is not per se negligence for a passenger to go from one coach to another while the train is in motion. The modern view results from the great improvement in constructing cars; the tacit or implied invitation by railroad companies in the make-up of the trains, including a smoking-car, a dining-car, and other coaches, that the passenger may pass from one to the other for his comfort or convenience. A passenger who undertakes to pass from one coach to another while the train is running assumes the risk of injury caused by the ordinary movements of the train. If he is injured in his effort to go from one car to another, and the railway company is not guilty of negligence proximately causing the injury, the passenger can not recover. *Hicks* v. *Ga. So. & Fla. Ry. Co.,* 108 *Ga.* 304 (32 S. E. 880). Or, if the railway company is negligent, and the plaintiff could have avoided the consequences thereof by the use of ordinary care and diligence, he can not recover. *Blitch* v. *Central R. Co.,* 76 *Ga.* 333; *So. Ry. Co.* v. *Strickland,* 130 *Ga.* 779 (61 S. E. 826). The circumstances attending the injury to the plaintiff's intestate as developed on the trial were sufficient to make a prima facie case against the carrier, and the burden was upon it to overcome the imputation of negligence or to show the passenger's contributory negligence. It appeared from the testimony that the train was behind time and running fast to catch up the lost time, and that it

gave a sudden plunge and jerk as Mrs. Auld passed to the platform. These facts are not conclusive that Mrs. Auld was thrown or fell from the train by a jerk usual and incident to the ordinary operation of the train. Under the rule just stated, it was a question for the jury to determine whether the defendant was negligent in the operation of the train, and whether under all the circumstances the plaintiff's intestate was guilty of such negligence in undertaking to pass from one coach to another as would defeat a recovery. *Branan* v. *So. Ry. Co.*, 135 *Ga.* 24 (68 S. E. 793).

2. A witness was examined by interrogatories. He was asked: "If you say anything about her moving from one place to another, state how and where she moved. State whether or not there was any custom with reference to moving. If so, what was the custom? Answer fully." To which he replied: "I saw her get up and start back through the car, and as she passed the door I did not see her any more. It is the custom of passengers to go from one car to another whenever they want to, and go to the toilet whenever they want to go." The court excluded the following part of the answer: "It is the custom of passengers to go from one car to another whenever they want to, and to go to the toilet whenever they want to go." We do not think that the question was too indefinite to apprise the defendant of an effort to prove a custom or usage among passengers to go from one car to another of a moving train. It is competent to show a known usage or custom of passengers to pass from one car to another while in motion, not so much as an act of license by the defendant, but as explanatory of the custom and usage of passengers on moving trains. If passengers commonly go from one car to another, the very commonness of the custom tends to show that it is known to the defendant. Of course, no custom to do an obviously dangerous act will excuse contributory negligence; but, as we have seen, this court can not say as matter of law that it is negligence to go from one car to another.

3. The court refused to allow a witness to testify that, from certain facts which he enumerated, it was his opinion that the jerk of the car threw Mrs. Auld from the train. There was no error in this. The jury were as competent to draw the deduction from the facts as the witness. *Taylor* v. *State*, 135 *Ga.* 622 (70 S. E. 237).

*Judgment reversed. All the Justices concur.*