William McNames, Plaintiff and Appellee, v. Donaker Brothers; H. E. Donaker and Ed Donaker, Defendants and Appellants.

**Contracts:** PAROL EVIDENCE: VARIANCE: RECOVERY FOR PARTIAL PERFORMANCE. Oral evidence is competent to interpret or apply an obligation assumed by the terms of a written contract. Thus where defendants contracted to furnish necessary casing for a well and plaintiff quit work because of a refusal to furnish further casing, oral evidence was admissible, under the agreement to show that it was usual and necessary to use a smaller pipe for the whole depth of the well, inside of the larger casing which could not be carried to a greater depth on account of an obstruction, and the same was not objectionable as tending to vary or add to the written agreement, or as tending to establish an alleged custom which was not pleaded.

In this action to recover the agreed price per foot for drilling a well, plaintiff having abandoned the work on defendant's refusal to furnish necessary casing as agreed, the evidence is held to support a verdict for plaintiff.

*Appeal from Calhoun District Court.*—Hon. Z. A. Church, Judge.

Friday, May 10, 1912.

Action on contract to recover the contract price per foot for drilling a well. The contract was only partly performed; plaintiff alleging that he was prevented from full performance by the refusal of defendants to furnish "necessary casing." The defendants answered with a general denial, but admitted the execution of the contract and pleaded a counterclaim for breach of the same. At the close of the evidence each party moved for a directed verdict. The trial court sustained the motion of the

plaintiff and overruled that of the defendant and entered judgment accordingly. The defendants appeal.—*Affirmed.*

*Healy & Healy,* for appellants.

*W. E. Gray, M. W. Frick* and *Chas. P. Frost,* for appellee.

Evans, J.—The defendants resided in Jolly, Iowa. They owned a farm in Pocahontas County. In September, 1909, they entered into a contract with the plaintiff for the drilling of a well upon such farm. The only part of such contract which is material for our present consideration is as follows:

Witnesseth, that said party of the first part agrees with said party of the second part to drill a well for said second party on his farm in section 25 in Dover township, Pocahontas county, Iowa, and said first party guarantees that said well will furnish, one bucketful of water per minute. The well to be started with five-inch casing and to continue in size as circumstances will permit at different depths. The said party of the second part agrees to furnish *all the necessary casing,* and to pay the party of the first part 100 cents per foot for the first 100 feet from the surface of the ground, and 25 cents per foot added to said price for each 100 feet below the first 100 feet, and the party of the second part agrees to board the necessary workmen and horses during the time they are engaged in the work, including the time spent in testing said well. If the party of the second part stops the party of the first part from drilling before the contract amount of water is secured, the party of the second part agrees to pay the regular contract price for what drilling has been done.

Plaintiff entered upon the performance of the contract on the 20th of October and drilled a well to a depth of 310 feet. For such distance he used a five-inch casing. The method of operation was to work the drill inside of

the casing; the drill cutting a hole larger by one inch diameter than the inside diameter of the casing. The casing was forced down the drilled hole until it could be forced no further. According to plaintiff's contention, the only method possible for the further prosecution of the work was to reduce the size of the casing to four inches. The usual and ordinary method of doing so is to put down a four-inch casing inside of the five-inch casing and for the full length of the well, and to work thereafter from within the four-inch casing. The defendants refused to furnish the four-inch casing for the 310 feet which had already been drilled, but were willing to furnish four-inch casing from that point down. Expert evidence was introduced by the plaintiff to the effect that it was not possible, or at least not practicable, to reduce the size and casing of a drilled well and to proceed with the drilling in any other way than that proposed by the plaintiff.

The following testimony of one Faulkner, an experienced well driller, in response to the interrogations of the court, is sufficient to indicate the theory of the plaintiff: "If in sinking a well after over 200 feet of five-inch casing had been used, I met an obstruction which couldn't be driven by, I would reduce and go on putting a smaller pipe on the inside. I would not connect them below. You have to start from the surface. You have no way of driving pipe in the bottom. You couldn't get anything to go down the five-inch pipe and sink the smaller pipe in the bottom without damaging it, and then you would have no way of connecting all other lengths in going down. When you reduce, they start from the surface; that is the rule everywhere."

The contention of the plaintiff is, therefore, that the casing called for by him was "necessary" within the meaning of the contract. On the other hand, the defendants contend that all such testimony was incompetent and irrelevant as varying and adding to a written contract and

as supporting an alleged custom which was not pleaded. The defendants also contend that the effect of such a construction of the contract would be to require them to furnish a double amount of casing for the 310 feet, and that this was not contemplated by the contract. The oral evidence on this question is undisputed, and the case is presented here on the theory that one party or the other was entitled to a directed verdict. It the evidence above referred to was admissible, then the plaintiff was entitled to recover the contract price per foot. If it was not admissible, the defendants were entitled to a directed verdict.

The term "necessary casing" does not purport to have a definite meaning. What casing would be necessary was not determined at the time of the execution of the contract. The contract did not purport to determine such question, but did purport to leave the question open to be determined by the circumstances attending the performance of the contract. Clearly, therefore, oral evidence was contemplated by the contract. The evidence introduced was not evidence of a "custom" in the sense in which such term is sometimes used. It was simply evidence of the usual and ordinary method of doing the work contemplated by the contract, in order that the court might properly interpret or apply the contract and ascertain from the evidence what amount of casing was "necessary" within the meaning of the contract. There is no attempt by such evidence to impose additional obligation on the part of the defendants' by reason of an alleged custom. It is sought only to interpret or apply the obligation which was assumed by the terms of the written contract. Such evidence is admissible in an action upon the contract as such, and without any special plea as to custom. *Bank v. Moodie,* 135 Iowa, 685; *Sherwood v. Bank,* 131 Iowa, 528; *Wood v. Allen,* 111 Iowa, 97; *Brody v. Chittenden,* 106

Iowa, 524; *Lindley v. Bank*, 76 Iowa, 629; *Manufacturing Co. v. Randall*, 62 Iowa, 245.

The case involves hardship to the defendants. They seem to have believed that much less casing would be necessary than the subsequent facts developed, and they are called upon to pay a substantial sum for work that brought them no benefit. But no other result is possible under the terms of this contract. They offered no testimony to show that there was any other practicable way whereby the plaintiff could have performed his contract than by the method adopted and proposed by him. Manifestly, no such evidence was available to them.

This question is quite decisive of the case. A number of assignments of error have been argued by appellant relating to the admission of testimony. We think some of these are well taken. But a correction of these errors would avail nothing to the defendant. The substance of the contention would still remain with the plaintiff. The case was not submitted to the jury, and therefore no question of prejudice at this point is involved.

A finding for the plaintiff at this point necessarily disposes of the defendants' counterclaim. It is our conclusion that the verdict properly went for the plaintiff. The judgment below must therefore be *affirmed*.