ADA B. CARTER, Administratrix of the estate of Mearl W. Carter, deceased, plaintiff and appellee, v. SIOUX CITY SERVICE COMPANY, defendant and appellant, HARRY L. STEVENS, defendant and appellant.

Railways: CROSSING ACCIDENT: NEGLIGENCE: EVIDENCE. In this action against a street car company and the conductor of one of its cars for negligence in operating a street car, causing the death of an employee in charge of a switching train ⸜with which it collided, the evidence is held to require submission of the question of whether the street car conductor was negligent in signaling his car to cross the tracks of the railway, before he had gone ahead of the car to the particular tracks on which the accident occurred.

Same: NEGLIGENT OPERATION OF TRAIN. The statutes requiring locomotives and cars to be equipped with automatic or power brakes does not require that all cars in the train shall be thus equipped, but a sufficient number must be so equipped to control the train; so that the court cannot say as a matter of law that an employee in charge of a switching train in the yards of the company, the cars of which were being placed for the purpose of loading, was negligent in not having the air brakes of the cars connected with the engine and in use.

Same. A steam railway train has the right of way when approaching a street car crossing; but the question of whether the train men were negligent in not stopping the train, under the evidence in this case, and when they saw the approaching street car on a track where cars crossed every few minutes of the day, was for the jury.

Same: EVIDENCE: CUSTOM. The usual method of piloting a street car over the tracks of a steam railway is admissible as bearing upon the question of negligence, although some variation is shown in the method followed; not on the theory that it is an established custom as applied to trades, occupations and localities, but rather that it constitutes the usual method of doing a practical thing which must be done in some manner, and may perhaps be done in a variety of ways.

**Same:** EVIDENCE: RULES OF CORPORATION. In an action against a street railway company and the conductor of one of its cars which collided with a steam railway train, causing the death of an employee of the steam railway company, the rules of the latter company are not admissible to show a violation thereof by the decedent; although admissible against the company promulgating the rule, where the sufficiency of a rule is challenged, or the action is between the employing corporation and one of its servants.

**Same:** INSTRUCTIONS. The trial court may in a careful exercise of its discretion meet an improper argument by an appropriate instruction, but the refusal of an instruction of this character will seldom amount to such an abuse of discretion as will call for interference by the appellate court.

**Same.** The court is not required to instruct the jury regarding a dispute arising between counsel in their argument, and which has no foundation in the evidence.

**Same:** CONFLICTING INSTRUCTIONS. Where the court clearly instructed that under the undisputed evidence the decedent had charge of the train, the further instruction that any negligence in the making up and handling of the train, ''in so far as the evidence shows that he was charged with the duty of making up and handling the train,'' was not erroneous, in that the quoted portion was impliedly contradictory of the previous statement, although the same was an unnecessary precaution against any assumption of facts.

**Verdict:** EXCESSIVE DAMAGES. A verdict for $12,000 for the death of a railway employee who was twenty-six years of age and was earning $125 per month in his employment was not excessive.

**New trial:** MISCONDUCT IN ARGUMENT: REVIEW. The conduct of a trial is largely a matter of discretion with the trial judge; and where no objection was made at the time to an impassioned appeal in behalf of the widow and children of a decedent, but the question is raised for the first time on appeal, a reversal will not be ordered on that ground.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

Tuesday, March 11, 1913.

This is an action for personal injuries. The plaintiff is the widow and administratrix of one M. W. Carter. Carter was a conductor or foreman in charge of a switching train of the Chicago, St. Paul, Minneapolis & Omaha Railroad Company. While engaged in transferring a train from one yard to another in Sioux City, his train came in collision with a street car of the defendant the Sioux City Service Company, and he was killed as a result of the accident. The defendant Stevens was the conductor of the street car. There was a verdict and judgment against both defendants, and they appeal. *Affirmed.*

*J. L. Kennedy,* for appellant, Sioux City Service Co.

*J. W. Hallam,* for appellant, Stevens.

*Jepson & Jepson* and *Henderson & Fribourg,* for appellee.

Evans, J. The accident occurred about 9:30 p. m. on the night of December 14, 1909, a cold and stormy night. It occurred on Iowa street, which was one of the main streets of the city between Morningside and the city proper. Iowa street runs north and south. The street car in question came from the south. The railway train came from a general northeasterly direction, but turned due west as it approached Iowa street. For the distance of nearly one block up to the point of collision the freight train was moving due west from east. Across Iowa street running east and west the company was maintaining twelve parallel "stub" tracks. These covered an area in width of about one hundred and fifty feet, extending from Third street south, Third street being an east and west street lying immediately north of the place of collision. The following plat will aid in an understanding of the record:

It will be noted from the diagram that the parallel tracks in question number from one to twelve beginning at the south side. The collision in question occurred at the intersection of track eleven. On the night of the accident these tracks were largely occupied by standing freight cars extending up to the sidewalk line. This was true of tracks ten and twelve. Track eleven, however, was open. As the street car approached the tracks from the south on the night in question it was stopped while its conductor proceeded ahead over the tracks as far as track nine. From track nine the conductor could see for a distance of fifteen or twenty feet from the street along track eleven. He neither saw nor heard any sign of an approaching train, and upon his signal the street car

came forward. As it passed track nine, the conductor stepped aboard while the car was moving. As track eleven was closely approached the freight train coming from the east was seen. It was too late to stop the street car, and it was hastened across. The freight train collided with the rear vestibule; both cars being derailed thereby. The freight train was made up of ten empty cars being pushed in front of an engine, and being transferred from one yard to another; the ultimate purpose being to distribute and "spot" them at various places where they were to be loaded with merchandise for shipment. The train exhibited no lights except the lanterns of men on top of the cars. For the purpose of lookout and signals, two men were stationed on top of the westermost car each with a lantern, and another man was stationed on top of a car near to the locomotive for the purpose of relaying signals in passing around curves. The decedent was one of the two who were stationed on top of the westermost car. He was in complete charge of the crew and train and of the making up of the same. By reason of the collision the decedent was thrown to the ground from the car, and received injuries thereby from which he died in a few hours. Other points will be stated in their appropriate place in the discussion of the various features of the case which are presented for our consideration. Eighty-nine formal errors are assigned for reversal by appellant. These are presented in still larger numbers in points in the brief. Manifestly we cannot follow the argument through so many details, but must content ourselves with dealing with the proper subjects involved in the various groups of exceptions.

I. Was there sufficient evidence of the negligence of the conductor Stevens to go to the jury on that question? It is the contention of the defendants that no negligence was shown. The place was one of manifest inherent danger. The night was dark and cold. Freight cars lined the street at this point. The car stopped before entering upon the inter-

1. RAILWAYS:
crossing accident: negligence: evidence.

section. It moved upon signal of the conductor as given from track No. 9. The conductor could have walked on to track No. 11. This was free from standing freight cars, and was therefore open for a passing train. It is his contention that he was not legally bound to follow such course, nor to cross any particular track, and especially so because his car after entering upon the tracks was in constant peril upon one track as much as upon another. Even the standing cars might be kicked by a locomotive at the further end of a train. He also contends that he could see from track nine along track eleven for a distance of twenty or thirty feet in either direction, and that he could see no further than that if he had stepped upon the intersection of track eleven. We think the question was clearly for the jury at this point. The jury could properly find from all the circumstances confronting this defendant at the time that, if he had taken the intersection at track eleven before signaling his car, he would have discovered the danger in time to prevent the accident. It surely could find that, if he had stepped upon the intersection on track eleven, he would have discovered the oncoming train at a greater distance than twenty or thirty feet. Granting that he was not bound as a matter of law to cross any track in advance of his car or to do any certain thing, he was bound to exercise reasonable care, and it was for the jury to say whether in the exercise of reasonable care under the circumstances surrounding him he did all that he ought to have done. The jury found that he did not, and the evidence warrants the finding.

II. Was the decedent guilty of negligence on his own part which contributed to his injury? This is a crucial question, and is not without its difficulties in this record. As already indicated, the decedent was in full charge of the train, and clearly he was responsible for the manner in which the train was made up and for the manner of its operation. The night was cold and the rails were frosty. Each car was equipped with an air brake, but none of these air brakes were coupled. The only brake, therefore, in use upon the train

was that of the engine. The train so made up was being moved through the city for the distance of about one mile. As already indicated, it carried no lights except the lanterns in the hands of three men. By reason of the curve in the track and of the height of the standing cars on the other tracks and of the fact that the lanterns were carried at about the height of the knee, they served to give but very brief warning of the approach of the train to the crossing, even though a flagman had stood upon the intersection. Carter and his brakemen, Stickle, were upon the westernmost car. As they approached the crossing they saw the light of the street car through its transoms from a point south of the tracks, and observed its approach toward track eleven without further stopping. It appears from the evidence of Stickle as a witness for the plaintiff that the approach of the street car was a subject of conversation between them. The fact that they could see only the transoms of the street car indicated that their own lanterns would be at that time below the line of vision of the persons in charge of the street car. The freight train was moving at the rate of about five or six miles an hour. There was no flagman in sight upon the intersection. The decedent gave no signal to the engine until his car had reached the line of the street, nor did he display his lights or attempt any other signal to the street car conductor. The defendants contend that the decedent was negligent as a matter of law. This contention is based upon two principal grounds: (1) That he was running his train in violation of section 2082 of the Code, and was therefore guilty of a misdemeanor, and that such violation contributed to the accident; and (2) because he saw the approach of the street car toward the intersection, and failed to stop as soon as he could have stopped and failed to display signals within the range of vision of the street car conductor.

Was the decedent guilty of a misdemeanor? Chapter 18, Acts 23d G. A., appears in the Code as sections 2079-2083.

2. SAME: negligent operation of train.
This chapter carries the general subject of "Automatic Couplers and Brakes." The first four sections thereof are as follows:

Sec. 2079. On New or Repaired Cars. No corporation, company or person operating any line or railroad within this state, or any car manufacturer or transportation company using or leasing cars therein, shall put in use any new car or any old one that has been to the shop for general repairs to one or both of its drawbars, that is not equipped with automatic couplers so constructed as to enable any person to couple or uncouple them without going between them.

Sec. 2080. On All Cars. After January 1, 1898, no corporation, company or person, operating a railroad, or any transportation company using or leasing cars, shall have upon any railroad in this state any car that is not equipped with such safety automatic coupler.

Sec. 2081. Driver Brake on Engines. No corporation, company, or person operating any line or railroad in this state shall use any locomotive engine upon any railroad or in any railroad yard in the state that is not equipped with a proper and efficient power brake, commonly called a 'driver brake.'

Sec. 2082. Power Brake on Cars. No corporation, company or person operating a line of railroad in the state shall run any train of cars that shall not have therein a sufficient number of cars with some kind of efficient automatic or power brake to enable the engineer to control the train without requiring brakemen to go between the ends or on the top of the cars to use the hand brake.

Section 2083 provides that a violation of any of the four preceding sections shall be deemed a misdemeanor and punished accordingly.

It will be noted that these sections prescribe the duty of the operating company to equip its cars with "automatic couplers" and "power brakes." These requirements purport to be made for the protection of employees. The declared purpose is to dispense with the necessity of requiring brakemen to go between the cars for coupling purposes or on top of the cars for braking purposes. In the case before us all the cars were properly equipped with air brakes and literally answered the call of the quoted statute, but these air brakes were not connected. Section 2082 does not require that *all* cars in a train shall be equipped with an "automatic or power

brake." It does require that there shall be a "sufficient number" to "enable the engineer to control the train without requiring brakemen," etc. In the case before us the engine was equipped with a driver brake as required. The ultimate question therefore is, Was this train so made up as to "enable the engineer to control the train"? The train was made up of "empties." It was running slowly. It *was* controlled by the engineer, and was stopped quickly. The defendants, however, introduced expert evidence to show that, if the power brakes on all of the cars had been connected, a quicker stop could have been made, and that the difference in time would have avoided the accident. This evidence, however, is not decisive as a matter of law. As already indicated, the statute does not require the connection of all of the cars in the train with the power brakes. On behalf of the plaintiff there was evidence tending to show that it was impracticable as well as unnecessary to couple the air brakes because each car had to be cut off and spotted for loading at its appropriate place. We conclude, therefore, that it cannot be said as a matter of law at least that the decedent was guilty of violating the statute.

Was the decedent negligent as a matter of law in failing to stop his train when he saw the approach of the street car?

3. SAME.     Street cars passed this crossing every five minutes of the day. In a sense, therefore, they were always approaching this crossing. The railway train had the right of way. If we should hold that the decedent was bound as a matter of law to stop his train when he saw the approach of the street car, then he was always bound to do so, and this would in effect give the right of way to the street car in lieu of the train. Whether he should have done so at this particular time in the exercise of ordinary care was a fair question of fact. The evidence on behalf of plaintiff tended to show that the usual practice was either for the flagman or the conductor of the street car to cross all the tracks in advance of the street car. If that had been done

in this case, the accident would probably not have happened. At least, the evidence would justify such a finding. Whether under all the circumstances the decedent should have relied upon the usual practice was a question of fact. An occasional exception to this usual practice was shown, but it does not appear that these exceptions occurred within the observation of the decedent. In any event the effect of such exception would be for the jury. The admissibility of this evidence of custom or practice is challenged by the appellants, and will be considered in a later paragraph. We think, therefore, that there was no error in submitting the question of contributory negligence to the jury.

III. The plaintiff introduced certain evidence as to the usual method adopted for the safety of street cars passing over these intersections at this place. Witnesses testified that usually when the flagman was on duty the car stopped until it was flagged by the flagman and then passed the crossing. When the flagman was not on duty, the car stopped until the conductor had passed across the tracks, and then moved upon signal from him. It was shown on cross-examination of these witnesses that this practice was sometimes varied and violated. One witness testified that he knew of one instance when the conductor signaled his car without having crossed all the tracks. Other witnesses admit that there was some variation in the practice. The defendants moved to strike out all of this testimony on the general ground that it purported to be evidence of a general custom, and that such custom was not shown to be universal, and that the evidence thereon was therefore not admissible.

4. SAME: evidence: custom.

There are certain rules of law applicable to "customs." These rules are usually applicable to what is called the custom of a trade or locality. In an appropriate case a custom may be made the basis or measure of a liability. It may become a part of an implied contract. In such cases universality, certainty, notoriety, and perhaps other characteristics

must be shown. Under old English law, it was essential that a custom should have antiquity to a point "whereof the memory of man runneth not to the contrary." Many such customs were recognized. There was a custom of London, and the custom of gavelkind in Kent which controlled the descent of real property, awarding it not to the eldest son, but equally to all the sons; and the custom of merchants which later become known as the "Law Merchant." The subject has had its expansion and relaxation in modern times. In this country no custom could be traced into antiquity, and this requisite has been abandoned here. The subject is recognized as an incident of trades and occupations and localities, and it is often resorted to in construing contracts or supplying their implications. The subject of custom in that sense is not involved here. The fact that the term "custom" was used in the testimony of the witnesses is not controlling. The word has its indiscriminate uses in the English language. We have before us here only an attempt to show the usual method of doing a practical thing, which must necessarily be done in some way, and may perhaps be done in a variety of ways. And, if it be proper to show the usual method of doing a thing, did the evidence become inadmissible because it disclosed that there was more or less variation in the usual method? And yet it is contended here by appellants, that because the usual method according to the witnesses was not rigidly definite and certain and uniform under all circumstances, therefore the evidence was not admissible at all. And this argument is predicated upon the proposition that no evidence of "custom" can be shown unless these legal prerequisites be first made to appear. From a somewhat different angle we had occasion in *McNames v. Donaker Bros.*, 155 Iowa, 318, to consider the distinction between the use of the term "custom" in its technical and restricted sense and its use in a general and more indiscriminate sense. What we have said there has its application here. See, also, *Legh v. Hewitt*, 4 East, 154 (7 Rev. Rep. 445). Evidence of usual method or

practice is very common where a question of negligence is involved. See *Auld v. Railway Co.*, 136 Ga. 266 (71 S. E. 426, 37 L. R. A. [N. S.] 518). In the cited case it was shown to be a common practice of passengers to pass from one car to another while the car was in motion. The evidence was held admissible on the question of negligence, though there was no claim that the practice was universal. In the case before us it was incumbent upon the jury to say whether one or both of these parties was responsible by his negligence for the collision. The jury could not say whether either one of these parties was negligent without having some conception of what under all the circumstances he ought to have done. What was the usual method (or usual methods if more than one) of piloting the street car across these tracks was to our minds an appropriate circumstance for the consideration of the jury. Not that any particular method was binding as a matter of law upon either party, but that the jury was entitled to all the circumstances. If there was or was not a departure from the usual method, such was proper evidence for whatever light it might bring. Upon the objection of the defendants, however, the trial court limited the purpose for which this evidence could be considered, and permitted the jury to consider it only as bearing upon the question of the negligence of the decedent. Its admissibility for this purpose is considerably emphasized. There was a collision at an intersection where both parties had a right to pass. The safe passage of each depended upon their co-operation and mutual understanding. If there were usual methods practiced which were mutually understood by both parties, then a departure from such methods by one tended naturally to the discomfiture of the other.

IV. The defendant offered in evidence certain rules of the Chicago, St. Paul, Minneapolis & Omaha Railroad Company for the purpose of showing that the decedent was violating such rules in the method of operating his train. We have had recent occasion to consider the admissibility of such rules in

5. SAME: evidence: rules of corporation.

personal injury and damage cases.  *Hoffman v. Cedar Rapids & M. C. Railway Co.*, (Iowa) 139 N. W. 165.  There is no doubt as to the admissibility of such rules in actions against the railroad companies where the sufficiency of the rules is challenged, or in actions between the employing corporation and its employee. *Cooper v. Central Railway Co.*, 44 Iowa, 134; *Beems v. C. R. I. & P. Railway Co.*, 58 Iowa, 150 (Id.; 67 Iowa, 435); *Coates v. B. C. R. N.*, 62 Iowa, 486.  In actions, however, between the railway company and a third person a different question arises, and the authorities are not in harmony over the admissibility of the rules in such cases. The cases are reviewed in the opinion referred to, and we need not repeat the discussion.  It is sufficient to say that in those jurisdictions, where the admissibility of the rules in evidence is sustained, it is usually put upon the ground that the rules are in the nature of an admission of the railway company, and are admissible against it as such when it is a party to the case.  The reason advanced against the admissibility of such rules as between the company and a third person is that the measure of care required of the railway company is fixed by the law and not by its rules.  If the rules require less than the law, it will not avail the corporation. If out of abundance of caution the rule requires a higher degree of care than is imposed by the law, the corporation should not be penalized therefor.  Extraordinary caution in the form of rules should be encouraged rather than discouraged.  But, if the adoption of such extraordinary precaution serves to increase correspondingly the measure and degree of care required of the company, then its attempt to accomplish higher standards than those fixed by the law, finds penalty instead of approval.  The force of this argument is met with a suggestion that, if in a given case the rules do set a higher standard than the law, the railway company can be protected by proper instruction to the jury.  The net result of the conflict of decision is that all agree that, even though the rules be admitted in a given case, they cannot be permitted to add

to or take away from the standard of the law. In those juris-
dictions which hold the admissibility of the rules even in
favor of third persons, it is seldom that a case can be found
where the rules were deemed of sufficient importance to merit
a reversal of the lower court because of their rejection. The
error of rejection is usually deemed without prejudice. In
the case before us it will be noted that the railway company
whose rules were offered in evidence is not a party to the case.
Its acts, therefore, are not admissible as being in the nature of
admissions. The rules are offered as against the decedent
alone and for the purpose only of showing his negligence in
that he violated such rules. If it were proposed by conductor
Stevens, to show that he had knowledge of such rules and their
usual observance, and was in some manner misled by their
violation by the decedent, a different question would be pre-
sented. Following the *Hoffman* case, *supra,* there was no
error on the part of the trial court in rejecting the proffered
rules. See, also, *McKernan v. Detroit St. R. R. Co.,* 138
Mich. 519 (101 N. W. 812, 68 L. R. A. 347).

V. The defendants asked an instruction to the effect
in substance that only reasonable care was required on the
part of the defendants to avoid the collision
in question, and that in fixing upon the degree
of care required of the defendant the jury should not con-
sider the obligation of care to the passengers upon the street
car, and this upon the theory that the rights of passengers
were not involved in this suit. The trial court refused this
instruction in form, but in its fifth instruction it did ex-
pressly instruct the jury that only reasonable care was re-
quired by the defendants, and that the same degree of care
was required of the decedent. Appellants concede that the
fifth instruction covered the ground in a legal sense, but they
contend it did not meet the argument of the plaintiff's attor-
neys to the jury, in that such argument held before the jury
the peril of passengers exposed to imminent collision. That
the trial court may properly meet an inappropriate argument

6. SAME: instruc-
tions.

by an appropriate instruction is probably true, but such a course is clearly a matter of discretion, and the discretion ought to be exercised with great care. Manifestly only an abuse of discretion could be subject to our review, and such abuse will seldom be found in the refusal of the trial court to enter the field of argument at all.

The defendants also asked for an instruction to the effect that it was as much the duty of the flagman to warn the street car at such crossings as to warn other persons. This instruction was

7. SAME.

also refused. The evidence was undisputed that the flagman did, in fact, flag the street cars when on duty. There was no dispute in the evidence to which the requested instruction was applicable. The reason for its request was that a dispute had arisen between respective counsel in course of argument before the jury. The intent of the requested instruction was to settle such dispute. What we have already said above is also applicable here.

VI. Complaint is made of certain instructions by the trial court being numbers 6¾, 7, 7½. The principal complaint lodged against each instruction is that it was not sufficiently specific, and was not sufficiently com-

8. SAME: conflicting instructions.

prehensive. Except in one respect no complaint of affirmative error is made at this point. Such error is assigned to instruction 7. Such instruction charged the jury that under the undisputed evidence the decedent as "foreman had charge and control of the train upon which he was riding and the way in which the same should be made up and handled." It further charged the jury "that any negligence or want of ordinary care in the making up and handling of said train *in so far as the evidence shows he was charged with the duty of making up and handling the train* would be chargeable to the said Carter." The defendants complain of the portion of the instruction above italicized. The argument is that it impliedly contra-

dicted the previous statement of the instruction as to the authority of the decedent. That the clause was unnecessary is undoubtedly true. The habit of precaution against assuming facts as established, is pressed upon trial courts by the requirements of our practice. If they fail to reserve opinion as to the facts in terms, then complaint is made because they assume facts. The most that can be said here is that the reservation was unnecessary. It could not be prejudicial, especially in view of the unequivocal statement as to the "undisputed evidence." It was not contradictory. It did impliedly recognize the distinction between the ultimate finding of a fact and the evidence tending to prove such fact. Such distinction is perhaps rather fine where the evidence is undisputed, but it exists nevertheless in a legal sense. We have given careful consideration to the three instructions which are criticized for insufficiency of statement.

We think they cover the case concretely and fairly, and furnish the appellant no ground of complaint.

VII. Defendant complains that the verdict is excessive. It was for $12,000. This was a second trial. The verdict at the former trial was for $11,000. The decedent was twenty-six years old. For two years or more he had been earning in the same employment $125 per month. He had saved over $1,100 in the purchase of a home. In *Grace v. Railway Co.*, 153 Iowa, 418, we reduced a verdict to $8,000. In that case the deceased was twenty-eight years old, and had been earning a little more than one-half the earnings of the decedent in this case. Manifestly the plaintiff in the case before us is entitled to hold a larger verdict than the amount allowed to stand in the cited case. Upon this record we think the verdict is not so clearly excessive as to justify our interference. And this is emphasized by the fact that it is the second verdict for the approximate amount.

9. VERDICT: excessive damages.

VIII. One of the grounds for motion for a new trial

was misconduct of counsel in argument to the jury. This misconduct consisted in an impassioned appeal to the sympathy of the jury "for the widow and orphan." No objection was made during the course of the argument, nor was the matter brought to the attention of the trial court in any way until the question was raised in the motion for a new trial. We think that a word of admonition by the trial court both to the counsel for the plaintiff and to the jury would have quite eliminated any ground of complaint at this point. Having ignored the misconduct at the time it occurred, the counsel are not justified in asking a reversal on that account upon this record. Orderly procedure and proper conduct of trials must rest in a very large measure in the discretion of the trial court, and we cannot lightly interfere therewith. The foregoing comprise the principal questions presented for our consideration.

10. NEW TRIAL: misconduct in argument: review.

Other minor errors are stated, but we find them without merit.

The judgment below must be *Affirmed.*

GAYNOR, J., took no part.