[Sac. No. 1906. Department One.—January 11, 1912.]

JOSEPH BARBOZA, Administrator of the Estate of Caesar Augustus, Deceased, Respondent, v. PACIFIC PORT-LAND CEMENT COMPANY CONSOLIDATED (a Corporation), Appellant.

NEGLIGENCE—DEATH OF RAILROAD-TRACK LABORER—TRAIN BACKING ON SPUR TRACK—QUESTIONS OF NEGLIGENCE FOR JURY.—In this action to recover damages for the death of a railroad-track laborer, who was run over while at work on a spur track by a train backing thereon, it is held, under the circumstances disclosed by the evidence, that it cannot be said, as matter of law, that the defendant was not guilty of negligence, or that the plaintiff was guilty of contributory negligence, and that the questions whether or not a due regard for the safety of the men on the track required the defendant to give warning of the approach of its train by ringing a bell or blowing a whistle, or by having upon the front car of its train a man who could see persons or objects on the track, were for the determination of the jury.

ID.—DUTY OF WORKMEN ON TRACK—REASONABLE CARE—CONTRIBUTORY NEGLIGENCE.—A man working upon a railroad track is bound to take reasonable precautions for his own safety, and must use the care which an ordinarily prudent man would exercise to avoid being struck by trains. What is reasonable care under the circumstances is primarily to be determined by the jury. In the present case, the facts that the work in which the deceased was engaged required him to be in the middle of the spur track, and in a stooping position, and that at the time he was run over by the train backing on the spur track another train was passing on the main track, necessitated the submission to the jury of the question whether he was guilty of contributory negligence in not becoming aware of the train bearing down upon him.

ID.—EVIDENCE—HEARSAY—MOTION TO STRIKE OUT TESTIMONY PART OF WHICH WAS COMPETENT.—A motion to strike out all the testimony of a witness in regard to the marriage of the deceased and his having children, on the ground that it was hearsay, is properly denied, where part of the testimony to which the motion was directed was competent and within the personal knowledge of the witness.

ID.—EVIDENCE OF CUSTOM—AIR BRAKES ON CARS.—In such an action, it was not error to refuse to permit a witness to answer a question by the defendant as to whether it was customary to have air brakes on all its cars.

ID.—EVIDENCE OF SOBRIETY OF DECEASED.—Evidence that the deceased was not addicted to drink and that he did not gamble was competent and pertinent, as having some bearing on the value of his life to his wife and children.

ID.—OPINION EXPRESSED BY COURT IN RULING ON EVIDENCE—WITHDRAWAL OF OPINION—INSTRUCTIONS.—A tentative expression of opinion by the court, incidentally made during a discussion of a question of law presented to it in reference to the admissibility of evidence, to the effect that the defendant's failure to ring a bell constituted negligence, will be deemed without prejudice, if the court subsequently withdrew such ruling, and in its instructions to the jury properly left the question of the defendant's negligence to its determination.

ESTATE OF DECEASED PERSON—APPOINTMENT OF SUBSEQUENT ADMINISTRATOR—TIME FOR FILING PETITION FOR APPOINTMENT.—Although the court has no power to appoint an administrator of the estate of a deceased person until a former administrator has been removed, or his resignation accepted, the statute, (Code of Civil Procedure, sec. 1427), does not require that the resignation of a former administrator must have been accepted before the filing of the petition for the appointment of a successor. If it is necessary, under that section, that the estate be delivered up by the first administrator before a second can be appointed, it must be presumed, from a record showing the appointment of the first administrator, his resignation and its

acceptance, his final accounting and its settlement, and the appointment of his successor, that such delivery was made.

APPEAL from a judgment of the Superior Court of Solano County and from an order refusing a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

Frank R. Devlin, Appellant.

W. U. Goodman, Ambrose Gherini, and Harvey & Goodman, for Respondent.

SLOSS, J.—The plaintiff, suing as administrator of the estate of Caesar Augustus, brought this action to recover damages for the alleged negligent killing of his intestate. The trial resulted in a verdict and judgment in favor of the plaintiff for twenty-five hundred dollars. The defendant appeals from the judgment and from an order denying its motion for a new trial.

The defendant corporation was engaged in the manufacture of cement. Its plant, which was located at a point called Cement, was connected by a spur line or track with the main railroad line of the Southern Pacific Company, the point of junction being at the station of Tolenas in Solano County. The defendant operated a train of cars between Cement and Tolenas.

The deceased, Augustus, was a laborer employed by the Southern Pacific Company. He was engaged in repairing the track near Tolenas station, when he was struck and killed by defendant's train which was made up of a number of cars propelled from the rear by a locomotive.

The complaint was in five counts, each of which set up a separate charge of negligence. Among these were averments that the defendant negligently backed its train over Augustus at a high rate of speed without giving him any warning; that it negligently failed to ring a bell or blow a whistle; and that it negligently failed to maintain air brakes on the train of cars.

There was evidence tending to show this state of facts. Augustus, who was one of a gang of several men working under the direction of a foreman, was engaged in driving

spikes.  He was standing midway between the two rails with his back to the defendant's train.  So far as the evidence shows, the position thus occupied by him was proper for the accomplishment of the work being done.  The defendant's train, which was not running on schedule time, had come from Cement, passing, on the way, the men at work on the spur track near the station.  This spur turned into the direct line of the Southern Pacific at a point some two hundred feet west of the station building and freight platform at Tolenas.  Beyond the station there were various switches and tracks running some hundreds of feet to the east of the freight platform. The train passed through to the easterly end of the yard and after switching from track to track, picking up empty cars, came back to the station and stopped there.  The engineer then started his train westward, propelling the train of cars ahead of his engine on to the track leading to Cement.  When he had proceeded some fifty or sixty feet beyond the switch leading to that track and some two hundred and fifty feet from the station, the car at the head of the train and farthest from the engine struck Augustus.  No bell was rung nor was the whistle blown.  There was a brakeman on a car next the engine and another on the third car from the forward end of the train. From this position the second brakeman saw that the deceased and the others were in danger and signaled the engineer to stop, but it was then too late to bring the train to a complete standstill in time to prevent the injury.  There was evidence that the train, at the time it was bearing down on the deceased, was running at the rate of eight miles an hour.  A through train of the Southern Pacific Company was at the same time passing upon the main line track and the noise produced by this through train was, as the jury may have well inferred, sufficient to prevent the men working on the track from hearing the approach of defendant's train.  The engineer in charge of the latter had seen the men at work when he had brought his train into Tolenas and knew, or might have known, that they were still at work when he started to return.  The point where plaintiff was working was within the limits of the Southern Pacific yard at Tolenas, but it was not at the end of the yard equipped for switching work, or in which the switching was usually done.

In this state of the evidence we cannot assent to appellant's

contention that, as matter of law, it should be held that the defendant was not guilty of negligence. Whether or not, under all the circumstances, a due regard for the safety of the men on the track required the defendant to give warning of the approach of its train by ringing a bell or blowing a whistle, or by having upon the front car of its train a man who could see persons or objects on the track, were questions of fact to be determined by the jury. It is no doubt true that the rules with reference to the necessity of giving warning of an approaching train by means of whistles or bells or otherwise, are not always applicable to engines and cars which are being moved about the tracks of railroad yards while switching. (*Aerkfetz* v. *Humphrey,* 145 U. S. 418, [36 L. Ed. 758, 12 Sup. Ct. Rep. 835] ; *Crows* v. *New York C. R. R.,* 70 Hun, 37, [23 N. Y. Supp. 1100].) But, as we have seen, the point where the train struck Augustus was not within that part of the yard devoted to switching and the train had completed its switching and had started on its return run to Cement. Furthermore, the noise produced by the passing train was a factor which the jury might well have considered as requiring greater effort to warn persons on the track than would have been required if the conditions had been such that the approach of defendant's train itself might have been more readily heard.

Nor can it be said, as matter of law, that the deceased was guilty of contributory negligence. A man working upon a railroad track is, of course, bound to take reasonable precautions for his own safety. Knowing that trains are likely to pass, he must use the care which an ordinarily prudent man would exercise to avoid being struck by such train. But what is reasonable care under the circumstances is, like the question of defendant's negligence, primarily to be determined by the jury. The work in which Augustus was employed required that he be in the middle of the track and in a stooping position. Obviously he could not perform his work properly if he were constantly looking to see whether a train was approaching. In view of the further fact that the noise of the passing train interfered with his opportunity of hearing defendant's train, the question whether he was guilty of negligence in not becoming aware of the cars bearing down upon him was properly submitted to the jury.

On the facts bearing upon both these questions i. e., the

negligence of the defendant and the contributory negligence of the plaintiff, the case is very similar to *Egan* v. *Southern Pacific Co.,* 15 Cal. App. 766, [115 Pac. 939], where the district court of appeal held adversely to the contentions of the defendant.

In order to establish his right to sue as administrator, the plaintiff offered in evidence all the papers, records, and files in the Matter of the Estate of Caesar Augustus. From these papers it appeared that B. J. Klotz, public administrator of Solano County, was appointed administrator of the estate on October 14, 1909. On February 4, 1910, Klotz filed his final account and tendered his resignation as administrator. On the same day the plaintiff Barboza filed his petition for letters. On February 14, 1910, the court made its order settling the account of Klotz as administrator and accepting his resignation and revoking the letters which had been issued to him. Thereafter, and on the same day, the court heard the petition of Barboza and made its order appointing him administrator. It is contended by appellant that the appointment of Barboza was void for the reason that at the time his petition was filed there was another administrator duly appointed. It has long been settled in this state that the court has no power to appoint an administrator until a former administrator has been removed or his resignation accepted. (*Haynes* v. *Meeks;* 20 Cal. 288; *Estate of Hamilton,* 34 Cal. 464.) "The office must first become vacant before a second appointment can be made." (*Haynes* v. *Meeks,* 20 Cal. 288.) But we find no warrant in the statute (Code Civ. Proc., sec. 1427) or in the decisions for the proposition urged by the appellant, that the resignation of a former administrator must have been accepted before the filing of a petition for appointment of a successor. Indeed, the contrary is at least implied, if not expressly held, in *Jennings* v. *LeBreton,* 80 Cal. 8, [21 Pac. 1127]. We think all that is required is that the accounts of the prior administrator shall have been settled and his resignation accepted at the time the second appointment is made. These conditions existed here. If it is necessary, under section 1427, that the estate be delivered up by the first administrator before a second can be appointed, it must be presumed, on the record before us, that such delivery was made. (*Jennings* v. *LeBreton,* 80 Cal. 8, [21 Pac. 1127].)

Lewis Roderigues testified that the deceased was married, and had left a widow and two minor children. The witness had not seen the widow or the children for two and a half years. He further testified that he knew that they were alive because the widow had written to him. His cross-examination developed that the widow was unable to write and that the witness could not read. A motion to strike out all his testimony "in regard to the marriage of the deceased and having children" on the ground that it was hearsay was denied. The ruling was proper. The motion might have been well taken if it had been limited to that part of the testimony relative to the receipt of letters. But the witness had also testified, of his own knowledge, to the fact of marriage and the existence at one time of the wife and children. This testimony was competent, and as it was included in the general motion to strike out, the court did not err in denying the motion.

The foreman in charge of the section gang was asked "What is your practice with regard to getting your men off the track when you are working with them? How close do the trains generally come?" The plaintiff's objection to this question was sustained. We need not consider whether this ruling was erroneous, as a reading of the record shows that at a later point the witness gave testimony covering substantially the subject-matter of these questions.

The same observation applies to the ruling sustaining an objection to the following question asked of the same witness: "Isn't it a fact that one of the officials of Cement on the morning of this accident hollered to you and told you to get your men off the track quicker or they would get hurt?"

It was not error to refuse to permit the witness White to answer the defendant's question whether it was customary to have air brakes on all the cars. (*Redfield* v. *Oakland C. S. R. R. Co.,* 120 Cal. 224, [43 Pac. 1117].)

The plaintiff was permitted to introduce evidence to the effect that the deceased was not addicted to drink and that he did not gamble. The evidence was competent and pertinent. (*Taylor* v. *Western Pacific R. R. Co.,* 45 Cal. 223.) It had some bearing upon the value of the life of Augustus to his wife and children as showing "the extent of his probable usefulness to his beneficiaries." (8 Am. & Eng. Ency. of Law, 2d ed., p. 944.)

The defendant took exception to certain remarks made by the trial court in the course of a discussion upon the admissibility of testimony. The defendant's counsel had asked the engineer of the train why he had not rung a bell. The answer was "It was not customary." At this point the plaintiff objected, whereupon the defendant argued to the court that the authorities permitted proof of what was customary. Thereupon the court said: "If you have authorities to that extent, you had better produce them. It seems to me without authority that it would be proper to ring a bell, and if the bell was not rung passing through that gang of workmen it would be negligence. If the court held differently, all right. I am with the court if it does." The defendant excepted to the statement "that we are guilty of negligence." Plaintiff's counsel said: "The court did not say that," and the court added, "It would be taken to be negligence itself." Counsel for appellant then remarked that he felt that such statement might be prejudicial and the court answered: "Well, I am perfectly willing to take the law, but you are entitled to have your exception." It is argued that in this colloquy the court declared its opinion that the failure to ring a bell constituted negligence and that this expression was necessarily prejudicial to the appellant. If the record showed nothing further, there might be considerable force in the point. But it appears that, after further argument, the court altered its view and concluded to permit the line of testimony to which objection had been made. The witness was allowed to state that it was not customary to ring a bell or blow the whistle under the conditions existing.

It is apparent from a review of the incident as a whole that if the court did express any opinion upon the facts, this opinion was merely tentative, and incidental to a discussion upon the question of law presented to it. The court stated what it believed the law to be. At the same time, it showed its readiness to have the authorities presented and to rule in accordance with them. After a fuller discussion, it accepted defendant's views and ruled in its favor. This was a complete withdrawal of any possible intimation that the failure to ring the bell or blow the whistle was negligence. Furthermore, the instructions, which were quite as favorable to the defendant as it had a right to demand, left to the jury the determination

of the ultimate question of negligence. Under these circumstances, we do not think the appellant could have been prejudiced by the remarks of the court addressed to counsel and drawn out by the argument upon the admissibility of offered evidence.

No other errors are assigned.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Angellotti, J., concurred.