C. B. WHEELER, Appellee, v. C. C. SCHILDER, Appellant.

NEW TRIAL: Specification of Error. A motion for new trial is
fatally lacking in certainty and definiteness which asserts "that
the court erred in sustaining the objections of plaintiff to evi-
dence offered by movent in each and every instance, as shown
by the notes of the official shorthand reporter."

APPEAL AND ERROR: Points Noticed Sua Sponte by Appellate
Court. Error in overruling motion to strike is waived by sub-
sequently demurring and answering—a waiver which the appel-
late court will apply *sua sponte.*

PLEADING: Pleading Over. Adverse rulings on demurrer are
waived by answering over, unless the demurrer point is again
raised in said answer, or at some subsequent and appropriate
time in the proceedings. Pleading reviewed, and held to re-
present the demurrer point in the answer.

LANDLORD AND TENANT: Leases—Construction—Exterminating
Weeds. Provisions of a lease that the tenant "shall prevent
the growth of noxious weeds on the cultivated parts of the
land," and "will cultivate said land in good and husbandlike
manner," are related clauses, and impose the obligation on the

tenant to make reasonable effort to keep both the cultivated and uncultivated portions free from such weeds.

EVIDENCE: Parol as Affecting Writing. The rule prohibiting the reception of parol evidence to vary, etc., the terms of a valid writing, is not available to one who is a stranger to the contract.

EVIDENCE: Relevancy, Competency, and Materiality—Breach of Contract. On the issue of damages for breach of contract to prevent the growth of weeds upon a farm, evidence as to the price at which the owner had contracted to sell the farm and the lesser price which he was compelled to accept, owing to the breach of said contract, is relevant, competent, and material.

APPEAL AND ERROR: Briefs—Reference to Record—Necessity. Assertions in argument of affirmative fact must be accompanied by appropriate reference to the record for the verification of such assertions.

EVIDENCE: Conclusions—Lessened Value of Land. Evidence by competent witnesses as to the relative value of land with and without noxious weeds thereon is an allowable conclusion.

APPEAL AND ERROR: Untenable Objection to Objectionable Testimony. It matters not, on appeal, whether the objections were tenable on which evidence was *excluded*, provided any ground exists which justifies exclusion.

WITNESSES: Cross-Examination—Scope. Testimony by a witness based on an *assumption* of fact, does not open the door, on cross-examination, to show by the witness that the assumption is not true. So held where an expert witness testified to the value of land, on the assumption that it was infested with noxious weeds.

APPEAL AND ERROR: Briefs—Reference to Record—Necessity.

EVIDENCE. Extent of Breach of Contract. On the issue whether a farm was infested with noxious weeds, evidence is admissible to show (a) the time necessary to cut and destroy such weeds, (b) the crops raised on the farm from year to year, and (c) the relative extent to which the farm was infested with weeds when the tenant took possession and when he relinquished possession.

*Appeal from Poweshiek District Court.*—HENRY SILWOLD, Judge.

MAY 13, 1918.

IT suffices for the purpose of preliminary statement that this is a suit by a landlord, complaining of violations of contract provisions in the lease. The landlord had a verdict, and the defendant appeals.—*Reversed.*

*J. H. Patton,* for appellant.

*W. R. Lewis,* for appellee.

SALINGER, J.—I. Two error points are, respectively, that judgment should not have been entered on the verdict; that motion to set the verdict and said judgment aside should have been sustained; and that a new trial should have been awarded. The motion referred to

1. NEW TRIAL: specification of error.

has twelve grounds. Aside from a claim that the verdict was contrary to the evidence and to the instructions and excessive, the motion is, in the main, made up of statements such as that the court erred in sustaining the objections of plaintiff to evidence offered by defendant in each and every instance, and that this is shown by the notes of the official shorthand reporter. All this is too general for consideration.

II. A motion to strike parts of the petition was overruled. Thereafter, the appellant demurred, including in the grounds of the demurrer what was charged in the overruled motion to strike. Still later, appellant

2. APPEAL AND ERROR: points noticed *sua sponte* by appellate court.

answered. The filing of such demurrer and the making of answer waived the ruling on the motion to strike, and it is our duty to disregard the assignment, though appellee does not urge such waiver of such ruling on the motion to strike. See *Heiman v. Felder,* 178 Iowa 740, and cases there-

in cited; *Jacobs v. City of Cedar Rapids,* 181 Iowa 407; and *Sloanaker v. Howerton,* 182 Iowa 487.

III. It is said to be error that the court admitted evidence in support of Count 3 of the petition. The complaint at this point is not that the testimony received was in itself improper, but that it should not have been received, no matter what it was, because *no* evidence was receivable in support of said count. This relieves us from investigating what such evidence was, which we would have to do by following out the directions of the brief of appellant to look at certain lines and pages of the abstract. The point presented is not an attack upon this testimony, but upon the standing of Count 3 of the petition. The attacks upon that count will be considered in another connection.

IV. When a demurrer is overruled, and the one interposing same thereafter answers, this waives the ruling on the demurrer, unless the matter presented by the demurrer is subsequently presented in some other manner. Under this rule, some questions remain for our consideration, though answer was made after the demurrer was overruled. What are these matters? In Count 3, the plaintiff declared that defendant should answer in damages because he had contracted in writing to destroy certain noxious weeds and rank grasses anywhere on the leased premises, and that, in addition thereto, he had promised orally to do this. One controlling thought of the demurrer is that Count 3 shows on its face that said alleged oral promise is without consideration, and constitutes no legal cause of action. The argument indicates the underlying reasoning to be that the written contract requires the destruction of weeds upon the cultivated part of the premises only; that, therefore, an agreement to destroy them on uncultivated parts of the farm is excluded by the writing, and an oral promise to do what the contract in effect says need not be done, cannot be en-

3. PLEADING: pleading over.

forced. Though the demurrer was overruled, and answer thereafter filed, we are of opinion that the point made by the demurrer may now be considered, because the allegation of the answer that the written contract was fully performed, without failure to comply with any of its provisions, presents the claim that appellant is under no liability for having failed to destroy weeds where not required to do so by the written contract. But though the point is reviewable, we think it is not well taken. It may be conceded there is no right to recover of appellant because of the alleged oral promise. But that is immaterial if the written contract, correctly interpreted, creates such liability. To

4. LANDLORD AND TENANT: leases: construction: exterminating weeds.

be sure, the written contract obligates the appellant to prevent the cultivated parts of the premises from growing up in rank grasses and noxious weeds. It may be assumed that, if this provision of the writing stood alone, that it would limit the duty of the tenant. But it does not so stand. The writing contains a further provision that the tenant "will cultivate said land in good and husbandlike manner." We are of opinion that this is a written agreement to make every reasonable effort to keep *all* the land free from noxious weeds and grasses. The two provisions must be read together; and we are not prepared to say, since certain noxious weeds in any place on the farm would be bound to injure the cultivated part thereof, even if not themselves on such cultivated part, that this was an agreement that the cultivated part only should be cleared of such weeds and kept clear of them,—not merely an agreement to clear the cultivated part, but to do all else in reason possible to destroy anything that would make useless labor if the tenant stopped at merely removing weeds and keeping them down on the cultivated lands.

V. Another ground of the demurrer is that, on its face, Count 3 is a mere repetition of Count 2, and that Count 2

is based on a written contract only; wherefore, plaintiff is not entitled to the relief demanded in Count 3. This, in effect, does no more than to repeat the claim that the written contract creates no duty which has not been performed, and that the alleged oral promise creates no liability. This point has already been disposed of.

VI. Appellee was permitted to show that a contract between her and the purchaser of this land from her states the price she was to receive for the land. The court permitted her to follow this up by a statement

5. EVIDENCE: parol as affecting writing.

that she, in fact, received $200 less than the amount recited in said contract. The defendant unsuccessfully objected that the contract in question was not in evidence, and that the oral testimony was incompetent; that the matter was not proper redirect, and was irrelevant and immaterial. If the general objection of incompetency is to be of avail here, it must be strained into an assertion that this testimony constituted a variance of the written contract between appellee and her purchaser. Assume this, and yet appellant is not in position to make this objection, because he is not a party to that contract.

We think that the court did not abuse its discretion in permitting this testimony to be given on redirect examination. Neither is the same immaterial and irrelevant. It was

6. EVIDENCE: relevancy, competency, and materiality: breach of contract.

one theory of the appellant that whatsoever he had done had caused the appellee no damage, because the price recited in the contract aforesaid was the full value of the land, if clean; and that, therefore, the appellee sold her land without losing anything by the fact that appellant had not kept the land clean. Testimony that less than the amount recited in the contract was in fact paid, was material and relevant to meet this theory.

It is said in argument that taking this testimony was

error, because there is involved merely "a voluntary reduction of the purchase price by appellee from the amount stipulated in the written contract of sale."

7. APPEAL AND ERROR: briefs: reference to record: necessity.

We are not favored with any reference to any place in the abstract which gives support to this claim, and do not feel bound to go through the entire record to determine whether this assertion of fact is sustained by the record. This is not the assertion of a negative, but an affirmative, statement, which, if supported at all, is sustained at some spot in the record. Be that as it may, all we can find is testimony on part of the appellee that there was a reduction, and no statement of how the reduction came to be made.

VII. On the question of damages, witnesses for plaintiff were allowed to testify, in effect, how much less in value the premises were before the weeds were cut than afterwards.

8. EVIDENCE: conclusions: lessened value of land.

It is insisted this testimony should have been excluded, on the objection that these were mere conclusions and expressions of opinion as to the amount of damages suffered by plaintiff, and, therefore, a usurpation of the province of the jury. We have to say that, while testimony of this character is in the nature of a conclusion and the expression of an opinion, that this is so of necessity. And if the witnesses were competent to speak to the question, and the record discloses they had the necessary experience and knowledge (and on this record the jury could so find), a statement on their part of what the value was before and after, is not an objectionable form of opinion evidence, and is not the equivalent of an abstract opinion as to how much damage was suffered by the plaintiff. Such testimony does not bind the jury to allow the amount of the alleged difference, but is the basis for the ultimate determination by the jury of how much damage was done.

VIII. Interrogatories proposed to appellee's witnesses

Ewing and Jones on cross-examination were excluded on the objection of appellee. Since these objections were sustained, we do not pass upon whether the objections made were good. For the purposes of this review, it suffices if there be any ground justifying the exclusion; and to whether there was no reason therefor, we now address ourselves.

9. APPEAL AND ERROR: untenable objection to objectionable testimony.

Over objection, Ewing testified in chief that, assuming the land as farmed became badly infested with cockle burs all over the cultivated portions of it, then, in his judgment, it would be worth $5 or $6 an acre less than if it had been properly farmed, and there were no cockle burs. On cross-examination. he said that, assuming the land was cropped for 30 or 40 years without being seeded down, and that yet it had raised good, average crops of oats and corn, from year to year, up to the present time, he would still adhere to the statement that, if that land had become badly infested with cockle burs all over the cultivated portions of it, there would be much depreciation per acre. It is after this, and in the progress of the same cross-examination, that he was asked to assume that the land produced good, fair crops of oats and corn in 1913, and whether, so assuming, he would say that that land was badly infested with cockle burs; and it was to this that objection was sustained.

10. WITNESSES: cross-examination: scope.

It is apparent that the utmost the witness could have answered, if permitted, was that, if the land produced a good crop in 1913, the land was not badly infested with cockle burs. If he had said, in his examination in chief, that the land was thus infested, refusing to let him answer this question on cross-examination would have been error. And so if the cross-examiner had asked whether witness adhered to his testimony on depreciation, although good crops were raised in 1913. But, as said, the proposed cross-examina-

tion could not relevantly develop more than a view of the witness to the effect that the land was, in fact, not badly infested. · He had never said it was. He had simply been asked to assume it. . His belief that the land was, in fact, not infested, would not weaken his testimony on depreciation, given on the mere assumption that it was infested. The appellant had the right to make this man his witness, and, on showing him qualified to speak, have him say, if he would, that the land was not full of cockle burs, and the like. But a statement by the witness while testifying for appellee that there was a depreciation in a stated amount, if the infesting be assumed, did not make it cross-examination to show by him whether there was, in fact, any in- festing.

The same is true of the cross-examination of appellee's witness Herbert Jones. He pretends to no personal knowledge on the actual condition of the land, and says nothing about it except that he does not know its condition as to cockle burs in the year 1913.

IX. It is asserted one witness testified he could not give the value of the property before or after the injury, and yet was allowed to state that the depreciation would be $1,000. If that be in the record, it is in 11. APPEAL AND ERROR: briefs: some place or places in it. There is no ref- reference to record: neces- erence, in connection with the statement, to sity. where its support may be found. We are not bound to go through the entire record to see whether the statement is supported, but did attempt to do so, and find nowhere a witness who said he could not give the value of the property before and after the injury, and, further, that such injury was $1,000. If we have failed to find this, it is due to the method of presentation. We are unable to find it, though we did more than our duty required.

X. Appellee's witness Crawford testified that the appellant made a bargain that Crawford should destroy the

weeds, and that, if appellant "had done what he agreed to do," the depreciation per acre would have been less than witness said it was. Appellant attempted to testify as to how long it would have taken Crawford to have done said destroying with a team and mower, and he was not allowed to say. It can reasonably ,be anticipated the witness would have answered that very little work on part of Crawford was contemplated in their bargain. If the jury believed this, it would weaken the testimony of Crawford on how much was lost to the appellee by failure to cut the burs. In other. words, if, say, an expenditure of $5 in work would have exterminated the burs, the jury could therefrom find that the burs were not as extensive as Crawford, by inference, asserted them to be. We think appellant should have been allowed to answer this.

12. EVIDENCE: extent of breach of contract.

XI. There was testimony that appellant claimed burs did no hurt, and admitted he had never cut any; that, at all times while appellant was in possession of the land, there were always more or less burs, and that this condition was due to his poor farming. In his direct testimony on his own behalf, he said the land was not seeded down for years past, and up to the time he surrendered possession; that it had been cropped regularly, from year to year, during all these years; and that there were cockle burs on the land when he took possession of it, in 1905. He was then asked, "What kind of crops did you produce on that farm from year to year?" This was excluded, on objection by appellee. Next, he was asked to say if he knew whether there were more or less cockle burs in the year 1913 than were present in 1905, when he took possession, and not allowed to answer. We cannot escape the conclusion that these rulings were erroneous. The testimony excluded was fairly calculated to raise an issue on whether the farm was, in fact, infested as badly as the appellee claimed, and, if so, to what extent this was

due to the fault of the appellant. Had answer been permitted, the jury might have found, from the fact that, though the land had been farmed for years, and had not been seeded down, it still produced good, average crops, that it could not have been infested to the extent that appellee claimed. And so testimony that, after years of farming there were less burs on the land than when the appellant took possession of it would have met the claim that the land had not been properly farmed. True, appellant was permitted to say that the burs were not so bad that they affected the crop in any way, and that there was a fair crop of corn in 1913, although the dry weather cut it short some in that season. This does not supply all that it may in reason be anticipated would have been disclosed, had the witness been allowed to answer said questions.

For the errors pointed out in Divisions X and XI hereof, the judgment below must be reversed.—*Reversed and remanded.*

PRESTON, C. J., LADD and EVANS, JJ., concur.