[Civ. No. 7615.   Third Dist.   Sept. 6, 1949.]

DANTE MILANI, as Administrator, etc., Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Rutherford & Rutherford and Thos. F. O'Hara for Appellant.

Leo C. Dunnell and William H. Herbert for Respondents.

SCHOTTKY, J. pro tem.*—Caesar Milani was an employee of the city water department of the city of Vallejo. Some time prior to June 28, 1946, the city decided to replace the existing 4-inch water main into the Sperry Flour Mill with an 8-inch main. The new water main was to be placed under spur tracks of the Southern Pacific Company used for service to the flour mill premises owned by General Mills, Inc. There are six spur tracks on said premises, spur tracks numbered 1, 2 and 3 being fed by number 3 track lead, spur tracks 4, 5 and 6 being fed by number 6 track lead. Each of these spur tracks serves a different building on the Sperry Flour Mills' grounds. The Southern Pacific Company's single track, leading from Lemon Street in South Vallejo to said flour mill premises at a point about 200 feet northerly of the entrance to said premises, divides into two tracks. One is called number 3 track lead; and in order to move a switching engine from spur tracks 1, 2 and 3 on to spur tracks 4, 5 and 6, it is necessary to leave the mill premises over number 3 track lead and return on number 6 track lead.

After the replacement work had been in progress for two or three weeks, at about 1:15 p. m. on June 28, 1946, while Caesar Milani and other employees of the city water department were engaged in placing the new water main under spur track number 5 the engine and tender of defendant Southern Pacific Company backed down that spur track and ran down Milani, severing one of his legs and inflicting other injuries from which he died.

Dante Milani, the administrator of the estate of Caesar Milani, brought an action against the Southern Pacific Company and the engineer and conductor, to recover damages resulting from said death. At the conclusion of plaintiff's case defendants made a motion for nonsuit upon the ground that decedent was guilty of contributory negligence as a matter of law, which motion was granted by the trial court. This appeal is from the judgment of nonsuit in favor of defendants, and the sole question to be determined is whether the trial court erred in granting the nonsuit.

Upon appeal from a judgment of nonsuit it is the duty of this court to consider the evidence, and the inferences which reasonably may be drawn therefrom, in the light most favorable to the plaintiff. That other evidence may be found in the record which would support equally reasonable infer-

*Assigned by Chairman of Judicial Council.

ences to the contrary is of no consequence. Bearing in mind these familiar and well-settled principles we shall summarize briefly the evidence introduced in the trial court.

At the time of the fatal accident the engine was backing, and deceased was struck by the rear of the tender. The train crew consisted of the engineer, fireman, conductor and two brakemen. Engineer Whitaker testified that during the last 40 feet of where deceased was working, he was looking in the direction he was traveling but did not see deceased, and also that he knew the city of Vallejo water department employees were working at the place where decedent was struck. Conductor Lentz testified that he knew the men had been working for the city along the spur tracks for about three weeks; that he had warned them to keep off the tracks during switching operations.

Witness Robert Burns testified that he saw the tender when it was about 1 foot from decedent and he looked at the engineer to see what he was doing and saw the engineer "looking in the opposite direction"—in a direction opposite from which the engine was traveling. The Southern Pacific Company switched cars in there every day, both morning and afternoon.

Witness Ewing testified that he was working with decedent at the time of the accident and saw the tender backing up, and when it was 10 to 15 feet from deceased he yelled: "Milani, look out, look out, look out, look out, as loud as I could holler," but deceased was struck; he saw a man in the cab of the engine who was looking in the direction opposite from that in which the engine was going; the train was moving 3 to 5 miles per hour; the train made no noise at all and he couldn't hear it; there was nothing wrong with decedent's hearing; when hit, decedent had his back toward the train; witness heard no bell.

Witness Camaniti was working with deceased at the time of the accident; a little before noon, their superior, Mr. Jeffers, told them to clean out between the tracks because they were supposed to leave the tracks like they found them (after the new water main was installed); the engine had switched there in the morning; he saw the engine standing still about 5 minutes before the accident about 184 feet from where deceased was struck; he heard Ewing holler to deceased, and when he looked, deceased had already been hit; the bell was not ringing; the whistle was not blown; when the engine was switching in the morning the bell was ringing but not in the afternoon when the accident happened; deceased was

not hard of hearing; witness heard no noise from the engine as it backed toward deceased.

It appears further that it was 1:15 o'clock p. m. on a clear day; that no one rode on the front of the tender to warn the workers or signal the engineer in case of danger to workmen; that the deceased was working between the tracks of track number 5 with his back toward the approaching engine and tender; that shortly before noon the engine backed out of the mill premises on track number 3, and that during the noon hour, when deceased and other workmen were away for lunch, the engineer returned to the mill premises over number 6 track lead.

Furthermore, plaintiff was entitled to the benefit of the presumption that the decedent took ordinary care of his own concerns (Code Civ. Proc., § 1963, subd. 4), for, as said by our Supreme Court in *Westberg* v. *Willde,* 14 Cal.2d 360, at page 367 [94 P.2d 590] :

"But in the other situation, where the acts and conduct of a deceased person are the subject of inquiry, and the testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, unless such testimony meets the requirement of the rule in the Mar Shee case, and other cases decided by this court following the Mar Shee case, an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is not only proper but this court in an unbroken line of decisions, has sustained the giving of such an instruction."

We have found no clearer statement of the rules applicable to the granting or denying of nonsuit than is set forth in the case of *Anthony* v. *Hobbie,* 25 Cal.2d 814, at page 818 [155 P.2d 826] :

"Turning to the question of contributory negligence on the part of the decedent, certain rules must be remembered. The burden of proving contributory negligence is upon the defendant. (19 Cal.Jur. 697-699.) True, contributory negligence may be found by the trier of fact from the plaintiff's own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be

drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion.'' (Citing cases.)

We believe that the trial court erred in granting defendants' motion for a nonsuit, thus taking away from the jury the issue as to whether or not the acts and conduct of decedent constituted contributory negligence. The trial court no doubt fell into the error of regarding decedent as being a person who was trespassing upon the right of way of the defendant railroad company, when as a matter of fact decedent had a right to be working where he was, and was entitled to a reasonable and timely warning of any danger from respondents' engine. The evidence shows that whereas the bell of the engine was ringing as it moved along the track in the morning, yet in the afternoon as the engine was approaching decedent who was facing the other way, no bell was ringing and no whistle was blown. Nor was anyone riding on the front of the tender to warn the workmen of its approach or the engineer of the presence of workmen. Under such circumstances it is clear that the issues of the negligence of defendants and the contributory negligence of decedent should have been submitted to the jury. For, as stated in *Barboza* v. *Pacific Portland Cement Co.*, 162 Cal. 36, at page 40 [120 P. 767]:

''Whether or not, under all the circumstances, a due regard for the safety of the men on the track required the defendant to give warning of the approach of its train by ringing a bell or blowing a whistle, or by having upon the front car of its train a man who could see persons or objects on the track, were questions of fact to be determined by the jury. . . .

''Nor can it be said, as matter of law, that the deceased was guilty of contributory negligence. A man working upon a railroad track is, of course, bound to take reasonable precautions for his own safety. Knowing that trains are likely to pass, he must use the care which an ordinarily prudent man would exercise to avoid being struck by such train. But what is reasonable care under the circumstances is, like the question of defendant's negligence, primarily to be determined by the jury. The work in which Augustus was employed required that he be in the middle of the track and in a stooping position. Obviously he could not perform his work properly if he were constantly looking to see whether a train was approaching.''

Counsel for respondents make numerous contentions in an effort to sustain the ruling of the trial court, but it would serve no useful purpose to prolong this opinion unduly by discussing these contentions, as a most casual reading of the evidence compels the conclusion that it was a case for the jury to decide. Even without the presumption that decedent took ordinary care of his own concerns there is sufficient evidence to submit the issue of contributory negligence to the jury.

. In view of the foregoing the judgment is reversed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied October 1, 1949, and respondents' petition for a hearing by the Supreme Court was denied November 3, 1949. Traynor, J., voted for a hearing.