Tom Pappas, appellant, v. Melvin Evans, appellee.

No. 47798.

(Reported in 48 N.W. 2d 298)

June 5, 1951.

William Pappas and Leslie L. Boomhower, both of Mason City, for appellant.

John A. Senneff and Robert Bliss, both of Mason City, for appellee.

SMITH, J.—Plaintiff, a railroad section foreman, was operating a railroad motorcar in a southerly direction over the Chicago Great Western Railroad track in Cerro Gordo County, Iowa, March 24, 1947. He was accompanied by two other section men, Martin and Staley, stationed respectively at the left and right front corners of the vehicle. Plaintiff sat on the left side behind Martin. The car had a low windshield over which the men could see.

As the motorcar approached the crossing defendant's automobile came from the west over a gravel highway and struck it so near to its right front corner as to kill Staley, the section man there stationed. Plaintiff was injured and brings this action for resulting damages. There was a verdict for plaintiff. The trial court granted defendant a new trial and plaintiff appeals.

I. The trial court, after instructing the jury as to what constitutes proximate cause, added (in the second paragraph) a comprehensive statement of the law concerning concurrent negligence and then said:

"In this case if you find that the negligence of the defendant * * *, if any, concurred with the negligence of Oscar Staley or of Tony Martin [plaintiff's coemployees] in causing the injury, the negligence of either * * * would be the proximate cause of the injury even though the negligence of neither * * * was the sole cause thereof, which is to say * * * the negligence, if any, of Oscar Staley or of Tony Martin does not excuse the negligence, if any, of the defendant * * *.

"You are further instructed, however, that the plaintiff could not relieve himself of his duty to use care. * * * by delegating it to someone else and if you in fact find that the plaintiff failed to use the care which * * * he was required to use, then he can-

not excuse himself for such failure because of some negligence on the part of Staley or Martin."

Defendant, by objection to instructions and in motion for new trial, urged that under the record there was no question of concurrent negligence involved but that the negligence, if any, of Staley or Martin would be imputed to plaintiff "who was the foreman under whose direction they worked, who had delegated this duty to them and he couldn't escape responsibility if their negligence in any way contributed, it would be his negligence."

The trial court in granting new trial apparently adopted defendant's theory, saying that while the instruction was "a correct statement of abstract law" it was not "a correct statement of the law applicable to this case. [It] makes the defendant * * * liable if his negligence concurred with the negligence of * * * the two fellow workers of plaintiff. Neither * * * had any responsibility for the safety of plaintiff except as [he] may have delegated to them the duty * * *. It would seem that to whatever extent [they] were required to be on the lookout, they were acting on behalf of plaintiff, and * * * their negligence, if any, would be the negligence of plaintiff and the instruction [on concurrent negligence] amounts to instructing * * * that the defendant would be liable if his negligence concurred with [that] of plaintiff."

This whole reasoning is unsound. It rests on the erroneous assumption that plaintiff may have delegated to his fellow servants his duty (of avoiding contributory negligence) in such manner as to make their negligence in that respect imputable to himself. In other words, that by such delegation he made impossible any recovery by himself for personal injury caused by negligence of defendant without establishing not merely his own care but also that of his companions.

The last paragraph of the instruction (which defendant argues is correct) announces the impossibility of a delegation that would excuse plaintiff from exercising care. Plaintiff could not delegate his responsibility, neither could he enlarge it by delegation—by creating additional safeguards, the failure of which might constitute contributory negligence.

The real difficulty is there was no occasion for any instruction on either concurrent or imputed negligence.

■ The record shows no conduct of either Martin or Staley requiring any reference to concurrent negligence. If it could be assumed they failed to keep proper lookout at the crossing that was not a violation of any duty they owed plaintiff. It did not concur with the claimed negligence of defendant. It was not a *cause* of the collision for which they could be held liable to plaintiff.

■ As to imputed negligence. Plaintiff was driving the motorcar. He had full control of its movement as to speed, stopping and starting. There is no suggestion Staley or Martin had any responsibility for plaintiff's safety or that he had depended on them or either of them in that respect. He says "I told Mr. Staley to look for everything, if he seen any broken rail or any car coming to the crossing, the same way I told Martin."

This concerned their duty to their company, not to plaintiff. It was not a "delegation" of responsibility for plaintiff's safety. There is no evidence he so considered it or relied on it. To apply the doctrine of imputed negligence here would be somewhat analogous to imputing to an automobile driver his guest's negligence in failing to protect him from injury.

The relationship of the men on the motorcar as coemployees was not such as to justify an application of the imputed negligence doctrine. McBride v. Des Moines City Ry. Co., 134 Iowa 398, 407, 408, 109 N.W. 618; Grace v. Minneapolis & St. L. R. Co., 153 Iowa 418, 429, 430, 133 N.W. 672; Stoker v. Tri-City Ry. Co., 182 Iowa 1090, 1095 et seq., 165 N.W. 30, L. R. A. 1918F 515. Defendant does not cite any cases to the contrary.

It is to be noted defendant requested no instruction on imputed negligence as he must have done had he desired such instruction. Teufel v. Kaufmann, 233 Iowa 443, 445, 6 N.W.2d 850. He apparently did not try his case on that theory.

■ II. Does it follow that because the whole instruction (other than the unquoted part pertaining to proximate cause) was unnecessary it was therefore prejudicial? Defendant argues it was confusing and contradictory. The argument loses much of its force in view of our conclusion in Division I. If there could be no imputable negligence and there was no evidence of

concurring negligence it is difficult to see how defendant was prejudiced. We do not think he was.

Defendant argues the last paragraph of the instruction is correct "but whether right or wrong it was the law of the case" and that "when you take" it and "then take the other part ∗ ∗ ∗ and say, *notwithstanding that the plaintiff was bound by the negligence of Staley and Martin,* that if the negligence of Evans [defendant] concurred ∗ ∗ ∗ the plaintiff could recover, the absurdity is manifest." (Italics supplied.)

The italicized words above either beg the question or are assumed to follow of necessity plaintiff's inability to delegate his duty of exercising care for his own safety. Such conclusion does not follow. On the contrary, if plaintiff's duty was not delegated to plaintiff's coemployees their negligence might, under some circumstances, concur with defendant's to injure plaintiff.

We conclude the paragraphs complained of were unnecessary but not abstractly erroneous or contradictory.

 Defendant cites cases to the effect that conflicting and confusing instructions are necessarily erroneous. The proposition is not applicable here. Unnecessary or immaterial instructions are not reversible where not prejudicial. 5 C. J. S., Appeal and Error, section 1764c, page 1132.

 III. The inherent power or discretion of a trial court to grant new trial in a proper case is undoubted. Burke v. Reiter, 241 Iowa 807, 812, 42 N.W.2d 907, 910. And in order that an appellate court may be in a position to appraise such a ruling it is proper that the ground thereof be shown. Hensley v. Davidson Bros. Co., 135 Iowa 106, 112, 112 N.W. 227, 14 Ann. Cas. 62; Burke v. Reiter, supra.

Here, however, the trial court evidently based its decision upon rule 244(h), Rules of Civil Procedure, viz., upon an error of law occurring in the proceedings. No opinion is expressed in the ruling that the giving of the instruction was prejudicial except on the assumption that there was evidence under which the jury might have found some negligence of Staley and Martin contributing to the injury and imputable to plaintiff. Since there was no such evidence the court's ruling was unsupported in that regard. We have already pointed out the considerations which

810

we think make untenable that assumption. Unnecessary instructions are not, as a matter of course, prejudicial.

IV. Defendant argues there were other grounds urged in his motion for new trial—grounds that would support the ruling though not so considered by the trial court. His right to this argument is unquestioned and unquestionable. Shaw v. Addison, 236 Iowa 720, 733, 734, 18 N.W.2d 796, and cases therein cited.

Some of these grounds were rejected by the trial court as referring generally to alleged errors in rulings on evidence without specifying any particular ruling and without any kind of identification or indication to point out the ruling or rulings complained of.

In argument here it develops one of these was a refusal to permit defendant, by cross-examination of plaintiff, to show the company rules and instructions as to plaintiff's duty of keeping a lookout at crossings.

Our own decisions have expressly held to what they denominate the majority rule, viz., that the law and not the rule of the company prescribes the standard of care at crossings required to be exercised by the company and its employees. Hoffman v. Cedar Rapids & Marion City Ry. Co., 157 Iowa 655, 139 N.W. 165, Ann. Cas. 1915C 905; Carter v. Sioux City Service Co., 160 Iowa 78, 90, 91, 141 N.W. 26. See also Lee v. Molter, 227 Minn. 557, 35 N.W.2d 801, 806.

In the Carter case it is succinctly stated: "If the rules require less than the law, it will not avail the corporation. If out of abundance of caution the rule requires a higher degree of care than is imposed by the law, the corporation should not be penalized therefor." (160 Iowa 90, 141 N.W. 31.) In that case plaintiff was administratrix of the estate of the conductor or foreman in charge of a switching crew of the railroad company whose rules were sought to be shown as bearing on intestate's contributory negligence in a collision between his train and defendant's streetcar. It is in point and conclusive here. True, the question here arose on cross-examination of plaintiff but it was offered as "bearing" on plaintiff's "want of care." It was immaterial for that purpose and we find nothing in the direct examination to make it proper cross-examination.

We have examined the other suggested errors in ruling on evidence claimed, in argument, to be sufficient to justify the granting of a new trial. Waiving any question as to whether the motion for new trial should have been more specific in pointing them out (see Wheeler v. Schilder, 183 Iowa 623, 167 N.W. 534) we find no error.

V. Defendant also argues the court erred in refusing his requested instructions numbered 3 and 5 and that these rulings should be considered in determining his right to a new trial. These requested instructions were designed to point out various details the jury might or should take into account in appraising the conduct of the parties in approaching the crossing: The nature of the gas motorcar; the difficulty with which it could be seen; hindrance to view; failure of plaintiff to give warning of his approach; the fact that plaintiff was in control of the motorcar operation, familiar with the crossing and the visibility of persons driving along the highway; the obstructions to view of such persons approaching the crossing from the west and difficulty in observing the gas motorcar.

No authority is cited by defendant at this point. The error in the rulings is taken for granted and argument is made only as to the noncontroversial proposition that defendant would be entitled to his new trial if there were grounds for granting it, even if the trial court assigned the wrong grounds. No reference is made to or comparison with the instruction actually given as to the duties of the parties as they approached the crossing and no contention is made that it was incorrect.

We have examined this instruction and deem it sufficient. It contains much of the matter contained in those requested by defendant. We said in Gray v. Chicago, R. I. & P. Ry. Co., 160 Iowa 1, 7, 139 N.W. 934, 937:

"The trial of a jury case always involves the presentation of a considerable volume of testimony as to more or less numerous specific facts * * *. More often than otherwise an attempt to instruct the jury minutely as to the legal effect of each specific evidentiary fact would be impracticable and more confusing than helpful."

We are convinced there was no error in refusing the requested instructions.

VI. Defendant has cross-appealed, claiming he was entitled to a directed verdict or to judgment notwithstanding verdict. His motions question the sufficiency of the evidence of his own negligence and of plaintiff's freedom from contributory negligence. These propositions require closer examination of the record than we have to this point given it.

The collision occurred in the morning. Defendant describes it as "cold, windy." He says: "Kind of chilly. Road conditions were dry and frozen." He says he thinks he was driving forty miles an hour, "Have driven that road many times every day." He says he had crossed that railroad "a number of times" and had never seen a gas motorcar there. He admits having seen them at other intersections.

His description of the road he was traveling and the view to the north as he approached the crossing is not too lucid: "Coming from a half mile west, going east, the land lays almost at a level and you can see up the track north about a half mile. Can't see the track itself a half mile up. There is a place up in there, there is a fill in the railroad you can see the track. The fill is probably eighteen inches high."

He speaks of a "cut the railroad goes through" about a hundred and fifty feet lengthwise and adds: "There is some place along there as you travel east that the view is cut off. Can't see the track at all about two hundred feet from the roadway because there is a dirt bank cut in and then the snow fence. As you get closer to the crossing, you just dip down to the track."

Defendant says the motorcar was back about ten feet when he first saw it and he was about forty feet, "It would take 128 official feet to stop, driving 40 miles an hour. I might be able to beat that a little. * * * At the time of the impact I was going about 30 miles an hour."

Plaintiff, on the other hand, estimates defendant's speed at "60 miles an hour at least, just prior to the collision" and says "I was going about 10 miles an hour." On cross-examination he admits that when he got within twenty feet of the crossing he could see for a half mile to the west if he had looked, "If you look at the country, yes, but I was looking at the track. Q. If you were looking up the highway you could see up there for a

number of rods and wouldn't you see an automobile? A. I could have if I didn't have the track. * * * Q. I see, but if you had looked before you had come into the crossing you could have seen and then you could have stopped? A. If I would look I could see the car. I already told Martin and Staley to look."

Plaintiff estimates defendant was back about a hundred and fifty feet from the crossing when he (plaintiff) first saw him, "Don't know how far he traveled but he was coming at a pretty high rate of speed. Maybe I traveled 15 feet. * * * He had about ten times as far to travel as I did. I was going about ten miles an hour."

Beyond question both parties knew the crossing and the conditions surrounding it. Neither the oral descriptions nor the numerous photographs submitted reveal a particularly dangerous situation, except that railroad crossings are always to be deemed dangerous.

We have set out sufficient of the facts to make clear without further discussion that there was a jury question on the issue of defendant's negligence. It was for the jury to determine under the instructions whether he approached the crossing in the exercise of due care.

VII. But defendant's appeal also challenges the sufficiency of the evidence on the issue of contributory negligence. We think there was enough to generate a jury question. The burden was on plaintiff but we must of course view the evidence in the light most favorable to him.

Plaintiff testified that about four hundred feet north of the crossing they had stopped to fill the "slow light" that had been set out "so the engineer from the north" could know "where the bad places are and he can slow down." (After this stop the men resumed their stations on the car.) "Their duties are to watch and if they see anything, watch for crossing, watch for rails. *I was supposed to look right down the track and do that kind of duty.*"

They proceeded southward "looking along the track again because I had it all shimmed up through there, that's why I had the slow order on. I had between one and a half and two inches

of shim in there and I had to be pretty careful going through this curve."

Plaintiff testified the planking at the crossing was twenty-two feet long and that he first saw defendant approaching when they were about five feet from it and defendant about a hundred and fifty feet, "I raised my head up and I seen him coming. It was a matter of seconds. I couldn't apply my brakes because I would stop right in the middle of the crossing."

At one point in his examination he said: "I was looking right along the track for defective rails, broken rails, spread tracks, broken angle bars, broken bows, broken irons or anything in connection with that line, and I had to look very closely."

It must be remembered we are talking now of contributory negligence. While ordinarily the distinction between negligence and contributory negligence is unimportant there *is* a very real difference, important here: The first involves a risk of injury to another, the second, a risk of injury to one's self. 65 C. J. S., Negligence, section 116, pages 707, 708, note 69. See also Restatement of the Law, Torts, section 463, Comment b:

"Contributory negligence differs from that negligence which subjects the actor to liability for harm done to others in one important particular. Negligence is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it. In the one case the reasonable man, whose conduct furnishes the standard * * * is a person who pays reasonable regard to the safety of others; in the other * * * [one who] pays reasonable regard to his own safety."

Contributory negligence of a plaintiff is not to be measured by the degree of care defendant owes him. Tate v. Canary Cottage, 302 Ky. 313, 194 S.W.2d 663, 665.

We must not confuse plaintiff's duty of looking out for his own safety with the duty owed by the railroad company to avoid injury to travelers on the highway at railroad crossings. Were the company being sued by Evans (defendant here) for damages suffered by him there would be involved a higher degree of care on the part of the railroad men on the motorcar because of the responsibility resting on the company to safeguard the public.

But we are concerned here with the care plaintiff owed *to him-self*.

Plaintiff's attention was divided because of the nature of his job: "I knew when I approached the highway it was my duty to be on the lookout and see if any cars were coming. * * * I was looking at the rail, the track was so badly disturbed I was looking at the track, I had my mind on the track, I didn't look at the crossing, but when I approached the crossing I raised my head up and saw the car coming but I was too late to stop, then I thought he would let me get over the crossing * * *."

The distinction is clear between appraising plaintiff's conduct as meeting the test of care due by the railroad company to the public, on the one hand, and the test of due care for his own safety on the other. His preoccupation with the performance of his work of inspecting and repairing the track could not be considered in the first instance but it has real significance in the last.

In Barboza v. Pacific Portland Cement Co., 162 Cal. 36, 40, 120 P. 767, 769, the California Supreme Court said:

"A man working upon a railroad track is, of course, bound to take reasonable precautions for his own safety. * * * But what is reasonable care under the circumstances is, like the question of defendant's negligence, primarily to be determined by the jury. * * * Obviously he could not perform his work properly if he were constantly looking to see whether a train was approaching."

And in a later California case it is said:

"The courts have often recognized that where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case." Ostertag v. Bethlehem Shipbuilding Corp., 65 Cal. App.2d 795, 801, 151 P.2d 647, 650.

In the case of Lee v. Molter, supra, the Minnesota Supreme Court was considering a case very similar to the present one. In discussing the issue of contributory negligence the court, after detailing the duties of the operator of the motorcar, observed:

"We cannot say that in the performance of his additional duties and in the observance of his additional responsibilities he became guilty of negligence as a matter of law because he failed to look again to his rear." 227 Minn., at page 564, 35 N.W.2d, page 805.

The Wisconsin Supreme Court has said:

" 'A momentary diversion of attention, or *preoccupation in the discharge of duties* [italics supplied], minimizes the degree of care required in the absence of such diversion or preoccupation. * * * Such diversion or preoccupation so far excuses the exercise of that degree of care ordinarily required as to make it a jury question whether the plaintiff's conduct under the actual circumstances constitutes ordinary care.' " Criswell v. Seaman Body Corp., 233 Wis. 606, 622, 290 N.W. 177, 183, 184 (from Hodgson v. Wisconsin Gas & Electric Co., 188 Wis. 341, 344, 206 N.W. 191, 193).

See also Torok v. Stambaugh-Thompson Co., Ohio App., 43 N.E.2d 653, 656, quoting 45 C. J. 951.

Plaintiff in the instant case was in the position of a workman upon the track at and near the crossing. His job was to inspect and repair the track. Operation of the motorcar was incidental. Had he been on foot putting in shims or driving spikes it could not be doubted his duty to exercise care for his own safety from injury by a careless motorist would be weighed in the balance with the other duties he had to perform.

Those other duties were of undoubted importance and required the closest attention. Perhaps plaintiff under the circumstances should have anticipated possible danger to himself from a negligently driven auto and should sooner have diverted his attention from inspection of the track in order to safeguard himself. But we cannot say so as a matter of law. What the reasonably prudent person should have done was, we think, for the jury to determine.

VIII. Our conclusion on the merits renders unnecessary any pronouncement on appellant's complaint that he was required by appellee to set out in the record, in question-and-answer form, much more than was necessary to the appeal or

than was justifiable under our rules.—Reversed on plaintiff's and affirmed on defendant's appeal.

WENNERSTRUM, C. J., and OLIVER, MANTZ and GARFIELD, JJ., concur.

THOMPSON, MULRONEY and HAYS, JJ., dissent.

BLISS, J., takes no part.

THOMPSON, J. (dissenting)—The majority opinion herein appears to me to be sound except for Division VII. With this I cannot agree, and must respectfully dissent therefrom.

It is the holding of the majority that there was a proper question for the consideration of the jury upon the alleged contributory negligence of the plaintiff. There is no dispute as to the facts which are important upon this point. The plaintiff, as a witness in his own behalf, said:

"I knew when I approached the highway it was my duty to be on the lookout and see if any cars were coming. * * * I didn't look at the crossing, but when I approached the crossing I raised my head up and saw the car coming but I was too late to stop, then I thought he would let me get over the crossing."

At another point he said that he did not look until he was about five feet from the crossing.

This failure to take the most elementary care for his own safety the majority forgives by holding that the plaintiff's duties required him to inspect the track, and consequently there was a diverting circumstance or an excuse for his neglect; at least to the extent that the question required submission to the jury. There is also some discussion of the difference between negligence and contributory negligence. While the matter does not seem to be of much importance, it should be pointed out that we said in Dreier v. McDermott, 157 Iowa 726, 730, 141 N.W. 315, 316, 50 L. R. A., N. S., 566, that: "Negligence charged against the defendant as a primary and moving cause of the injury is no different in its essential elements than is the negligence of the plaintiff which contributes to the injury complained of." But in the last analysis the real question is whether the negligence of the plaintiff as a contributing factor so clearly appears that

the minds of reasonably honest men could reach but one conclusion. If it does, then the matter is one for the court.

Before passing to consideration of the cases cited by the majority, let it be pointed out first, that this dissent is based solely upon the plaintiff's own testimony, by which of course he is bound, and which is not contradicted, and second, that, in Iowa, the burden is upon the plaintiff to establish his freedom from negligence contributing to his injuries by a preponderance of the evidence.

The majority's chief contention apparently is that the plaintiff was, to an extent sufficient to generate a jury question, excused from care for his own safety by the fact that his duties required him to inspect the track as he rode along upon the gasoline-propelled car. Several cases are cited in support of this position. None of them seems to me to be factually in point; and some of the language used, as will be pointed out, is in direct contravention of the theory which it is said to uphold.

In Barboza v. Pacific Portland Cement Co., 162 Cal. 36, 40, 120 P. 767, 769, the plaintiff's intestate had been killed while working as an employee of a railroad company engaged in repairing track. Defendant's train backed upon him. His work required him to be upon the track almost all of his time; and he was there, of course, subject to continual danger from trains. The California Supreme Court said:

"Knowing that trains are likely to pass, he must use the care which an ordinarily prudent man would exercise to avoid being struck by such train. * * * Obviously he could not perform his work properly if he were constantly looking to see whether a train was approaching."

It need only be pointed out that in the case at bar plaintiff was not required to keep a constant vigil, at least for the type of danger which he met. He knew the track by long experience, in working over it, and he must have known where the crossings were located. A glance every few miles, as he approached a crossing, would have advised him of any vehicular traffic approaching on the roads, and would have interfered with his duties only to a most negligible extent. He testifies, as has been pointed out, that he knew of his duty to look for cars at the crossings.

There is no dispute that in this duty he failed; his own testimony makes this certain.

Ostertag v. Bethlehem Shipbuilding Corp., 65 Cal. App.2d 795, 151 P.2d 647, 650, a majority authority, is a case in which the plaintiff was injured while installing electrical equipment in a building under construction. He was struck by a traveling crane operated by defendant's employees. There is here a serious question whether he had any reason to anticipate or to be on his guard against any such injury as occurred; but at most it is merely another case where his duties kept him in some constant possibility of danger, for which his work made it difficult to keep always on the watch. The factual difference between that situation and the one prevailing in the instant case is readily apparent.

Criswell v. Seaman Body Corp., 233 Wis. 606, 290 N.W. 177, is not helpful to plaintiff's case. The plaintiff, a construction worker, was injured by an electric shock coming from wires installed by defendant. The gist of the holding is contained in this language, 233 Wis. 616, 290 N.W. 181: "Criswell knew that the cable should not touch the wires, but neither he nor Sharkey knew that electric current could be transmitted when there was not as yet an actual contact between a wire and the cable." In other words, the plaintiff had no knowledge that he was threatened by the danger which overtook him, and no means of knowing, unless he were a skilled electrician, which he was not.

In Hodgson v. Wisconsin Gas & Electric Co., 188 Wis. 341, 206 N.W. 191, the plaintiff was a lineman for a telephone company who, while at work, came in contact with a charged wire belonging to the defendant. The court applied the rule which the majority thinks is appropriate here; but again it is to be pointed out that the plaintiff's duties kept him in constant danger from near-by lines carrying electricity. The performance of his work did not permit him to maintain a constant vigil such as would have been necessary for complete protection.

The facts in Torok v. Stambaugh-Thompson Co., Ohio App., 43 N.E.2d 653, are not helpful here. Plaintiff, a customer, being taken to the rear of defendant's store to look at paint, fell down a stairway which he did not know was there. There was no question of any duties which prevented him from observing his

danger, nor anything which seems to touch the facts with which we are dealing in the case at bar.

If plaintiff's work had kept him constantly upon the crossing, as when he might have been reconstructing or repairing it, some of the above cases cited by the majority would be in point. Then it could fairly be said that he could not properly perform his duties if he were compelled to watch continually for vehicular traffic. But the actual fact is that he was at the crossing for an instant only; and a glance each way to ascertain whether danger approached would in no substantial manner have interfered with his performance of his track-watching duties.

We now reach the case which the majority thinks is very similar to the present one: Lee v. Molter, 227 Minn. 557, 35 N.W.2d 801. It is true that this case involved a grade-crossing collision between a railroad section gas motorcar and a motor vehicle; but here the similarity ends, at least in so far as there is anything in the facts shown or the reasoning of the Minnesota Supreme Court which in any way helps the majority in the case at bar. It may be pointed out, as one clear distinction, that the Minnesota court held that the railroad gas car had the right of way at the crossing, basing this upon a statute of that state which required vehicles upon the highway to come to a stop before crossing the railroad tracks at this particular place; but there are other facts and other language in the case which not only do not aid plaintiff's case here, but, it seems to me, destroy it. There was evidence in the cited case that both plaintiff and his helper upon the gas car had looked to their right—the direction from which defendant's truck approached—as they neared the crossing. The Minnesota Supreme Court said of this situation (227 Minn. 563, 35 N.W.2d 805):

"Here, however, there was substantial evidence to indicate the exercise of reasonable care by both plaintiff and Kowalski. *Due care,* as well as safety regulations, required that they direct their observations to the tracks for obstructions or objects thereon; to their rear, to observe the approach of an expected freight train; *ahead, to gauge their distance from the crossing; and to the right and left, as well as to the near-by highway.*

"Plaintiff had looked for vehicles approaching from his right. A jury might conclude that at the rate of speed defend-

ant was then traveling he was not yet within plaintiff's ràrange of vision at that time. Thereafter, plaintiff made other *required* observations: *Of the highway to his left,* of the tracks below, of the tracks ahead, and of the tracks to his rear for the approaching freight train. *All such observations were part of his responsibilities,* and we cannot say that because he failed to keep watch only to the east for vehicles using the highway he was guilty of negligence as a matter of law." (Italics supplied.)

Due care, said the Minnesota court, required the plaintiff to look to his right and left and to the highway; and it is to me an inescapable conclusion that that court would have said, if the plaintiff had testified squarely that he made no attempt to observe the highway, which he knew he was approaching, until within five feet of the crossing, when it was too late to stop, that he had by his own words convicted himself of contributory negligence as a matter of law.

When the facts are undisputed and the existence of contributory negligence is sufficiently apparent to fair-minded and reasonable men so but one conclusion may fairly be drawn therefrom, there is no question to be submitted to the jury. Perkins v. Schmit Construction Co., 215 Iowa 350, 353, 354, 245 N.W. 343; Dreier v. McDermott, supra.

And it is said in 65 C. J. S., Negligence, section 120, pages 722, 723:

"The duty to exercise ordinary care to avoid injury includes the duty to exercise ordinary care to observe and appreciate danger or threatened danger. A person is required to make reasonable use of his faculties of sight, hearing, and intelligence to discover dangers and conditions of danger to which he is or might become exposed, and one injured as a result of his failure to use his faculties to observe and discover a danger which would have been observed and discovered by an ordinarily prudent person is guilty of contributory negligence."

Much of this was quoted, with approval, from 45 C. J. 947, in Boles v. Hotel Maytag Co., 218 Iowa 306, 314, 253 N.W. 515.

The majority opinion, in effect, recognizes the rules last-quoted and attempts to excuse plaintiff's failure to comply with their requirements. I have attempted to demonstrate that the

cases cited in the majority opinion are not in point, and that there was no logical or reasonable excuse for the plaintiff's neglect to take simple and easily-used precautions for his own safety.

I would affirm upon plaintiff's appeal, upon the ground that the defendant having been entitled to a directed verdict, any error in granting a new trial against plaintiff was nonprejudicial. I would reverse upon defendant's appeal and would hold that defendant's motion for judgment notwithstanding verdict should have been sustained.

I am authorized to say that JUSTICES MULRONEY and HAYS concur in this dissent.